UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN H. STIER, ESQ., AS WIND DOWN TRUSTEE FOR MLS BERKOWITZ INVESTMENTS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>DIEGO POSSEBON, *et al.*<br><br>    Defendants. | Case No.: 24-cv-04647<br><br>**MOTION RETURN DATE: JULY 1, 2024** |

### MEMORANDUM OF LAW IN SUPPORT OF THE TRUSTEE'S MOTION FOR ALTERNATE SERVICE

                  **CALCAGNI & KANEFSKY LLP**
                  Eric T. Kanefsky, Esq.
                  One Newark Center
                  1085 Raymond Blvd., 14th Floor
                  Newark, NJ 07102
                  (862) 397-1796
                  Eric@ck-litigation.com

                  **GENOVA BURNS LLC**
                  Daniel M. Stolz, Esq.
                  440 Broad Street
                  Newark, NJ 07102
                  (973) 533-0777
                  DStolz@genovaburns.com

                  *Attorneys for Plaintiff Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND ...................................................................................................... 2

    A. Proceeds from the Fraud Were Used By Defendant Larissa Carvalho Possebon to Purchase a Miami Condominium ........................................................................ 3

    B. The Trustee Seeks to Serve Mrs. Possebon Through Her Personal Email Address, Her U.S.-Based Attorney, and Her Agent and Broker for the Miami Condominium Purchase ................................................................................................................. 4

III. ARGUMENT ............................................................................................................ 6

    A. The Court Should Enter an Order Permitting Alternative Service on Defendant Larissa Possebon ................................................................................................... 6

        1. Legal Standard ........................................................................................ 6

        2. The Proposed Methods of Service Are Permissible and Are Reasonably Calculated to Provide Notice to Mrs. Possebon ......................................... 7

        3. Service By Alternate Means is Permissible Where, As Here, Service Through the Hague Convention Would Cause Months of Delay ............... 9

IV. CONCLUSION ....................................................................................................... 11

# **TABLE OF AUTHORITIES**

CASES

*Apex.AI, Inc. v. Langmead*, 23-cv-02230-BLF, 2023 WL 3391962 (N.D. Cal. May 10, 2023)...11

*Aquapaw Brands LLC v. Yan-Peng*, 2:21-CV-01784-CCW, 2023 WL 3538551
 (W.D. Pa. May 18, 2023)..................................................................................................6

*Browne v. Donalds*, No. 2:21-CV-02840-AB-AFM, 2023 WL 4626697
 (C.D. Cal. Apr. 13, 2023) ................................................................................................8

*Element Capital Commercial Co. v. BOE Tech. Grp. Co.*, Civil Action 2:22-CV-00118-JRG,
 2022 WL 4368162 (E.D. Tex. Sep. 21, 2022).................................................................10

*Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, No. 22 CIV. 4594 (PGG),
 2022 WL 2758417 (S.D.N.Y. July 14, 2022).............................................................2, 8, 10

*F.T.C. v. PCCare247 Inc.*, No. 12-CV-7189 (PAE), 2013 WL 841037
 (S.D.N.Y. Mar. 7, 2013)...................................................................................................9

*Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021).................................6, 7, 8

*In re Cattle Antitrust Litig.*, No. CV 19-1129, 2021 WL 7757881 (D. Minn. Sept. 14, 2021).......7

*In re Fairfield Sentry Ltd.*, No. 10 13164 (SMB), 2020 WL 7345988
 (Bankr. S.D.N.Y. Dec. 14, 2020).....................................................................................7

*Merrimack Mut. Ins. Co. v. New Widetech Industries Co. Ltd.*, No. 3:20-cv-546 (MPS), 2020 WL
 5879405 (D. Conn. Oct. 2, 2020)....................................................................................7

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385 (S.D.N.Y. 2014)...............................9

*Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380-PGG-OTW, 2019 WL 6498305
 (S.D.N.Y. Dec. 2, 2019)...................................................................................................8

*Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655, 2020 WL 1508748
 (S.D.N.Y. Mar. 30, 2020).................................................................................................6

*Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)..................................................6

*SEC v. MCC Int'l Corp.*, No. 22-cv-14129, 2023 WL 5659064 (S.D. Fl. 2023).................2, 7, 10

*ShelterZoom Corp. v. Goroshevsky*, No. 19-CV-10162 (AJN), 2020 WL 4252722
 (S.D.N.Y. July 23, 2020)...............................................................................................8, 9

*Smith v. SMS Grp.*, 22-cv-1303-DWD, 2022 WL 15460279 (S.D. Ill. Oct. 27, 2022) ................10

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ......................................................................10

*U.S. Secs. and Exchange Commission v. Vuuzle Media Corp.*, No. 21-1226, 2021 WL 1731947, (D.N.J. May 3, 2021)..................................................................................................................7

*Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 CV. 8118, 2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018)..........................................................................................................8

<u>R</u><u>ULES</u>

Federal Rule of Civil Procedure 4(f)..............................................................................2, 5, 6, 7

Plaintiff Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC (the **"Trustee"**), respectfully submits this brief in support of the Trustee's motion, pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure, for an order authorizing Plaintiff to serve the Complaint and Summons, as well as forthcoming motion papers relating to funds in possession of Fidelity National Title Insurance Co. and Miami Waterfront Ventures, LLC, by alternative means upon Defendant Larissa Carvalho Possebon (the **"Motion"**).  In support of the Motion, the Trustee also relies on the accompanying Declaration of Daniel M. Stolz (the "Stolz Decl.") and Declaration of Rabih Nasser (the "Nasser Decl.").

I.    **INTRODUCTION**

This case involves a massive fraud perpetrated against MLS Berkowitz, LLC, a company trading raw metals, and its principal creditor, Gerald Metals SARL. The two companies were victimized by a sophisticated conspiracy involving over 100 individuals and entities, resulting in the loss of nearly $50 million.

Through this Motion, the Trustee seeks an order allowing for alternate service on Defendant Larissa Carvalho Possebon ("Mrs. Possebon"), the wife of the primary perpetrator of the fraud, Diego Possebon. Mrs. Possebon resides in Brazil.  Although counsel for the Trustee has begun the process of serving Mrs. Possebon through the Hague Convention, this process, per the Brazilian Superior Court of Justice, takes 170 days on average to complete, meaning that it could take six months, if not more, to serve Mrs. Possebon.  Such a significant delay is untenable, particularly because Mrs. Possebon served as a key participant in a recent transaction to use proceeds of the fraud to purchase a luxury oceanfront condominium in Miami for $6.5 million, and the Trustee seeks to expeditiously recover these funds through a forthcoming motion for summary judgment. The Trustee, therefore, seeks permission to serve Mrs. Possebon through (i) her personal email; (ii) her U.S.-based attorney who represented her in connection with the

condominium purchase; and (iii) the broker and purchasing agent who acted on behalf of Mrs. Possebon in connection with the Miami condominium transaction, who is the sister of Diego Possebon and Mrs. Possebon's sister-in-law.

The Court is empowered to allow for alternate service under Federal Rule of Civil Procedure 4(f)(3). Courts have consistently endorsed service by email on defendants residing in Brazil where, as here, service of process through the Hague will take months to complete and contact information for the defendant via email is readily available. *See, e.g., Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, No. 22 CIV. 4594 (PGG), 2022 WL 2758417, at *1 (S.D.N.Y. July 14, 2022); *SEC v. MCC Int'l Corp.*, No. 22-cv-14129, 2023 WL 5659064 (S.D. Fl. 2023). Moreover, allowing for alternative service is particularly appropriate here because the Trustee seeks to move for summary judgment on an expedited basis to recover the proceeds of the fraud that Mrs. Possebon sought to deploy. The Trustee, therefore, respectfully asks the Court to grant the Motion and permit alternate service under Rule 4(f)(3) to ensure that this case can effectively move forward against Mrs. Possebon without undue delay.

## II.    BACKGROUND

As detailed in the Complaint (*see* ECF Doc. Nos. 1 and 7), this case involves a fraud perpetrated against MLS Berkowitz, LLC (**"MLS"**), a company trading raw metals, and its principal creditor, Gerald Metals SARL (**"Gerald"**). MLS and Gerald were victimized by a sophisticated conspiracy involving over 100 individuals and entities, resulting in the loss of nearly $50 million. *See* Complaint, ¶ 1. The fraud began with a successful transaction in 2022 in which Diego Possebon (**"Mr. Possebon"**), a Brazilian businessman with whom MLS had prior successful dealings, convinced MLS to purchase several containers of tin concentrate sourced from Brazil that were, in turn, sold to Gerald. *See id.*, ¶ 2. However, in subsequent dealings orchestrated

by the conspirators, MLS was induced by Mr. Possebon and his co-conspirators into purchasing what was purported to be tin concentrate but turned out to be worthless gravel dust. *See id.*, ¶ 3.

The scheme involved elaborate deception, including falsifying documents, using decoy shipments, and laundering money through intermediaries. *See id.*, ¶¶ 4-7. The fallout from the fraud has left MLS bankrupt, and this action seeks to hold the perpetrators accountable and recover the stolen funds. *See id.*, ¶¶ 8-9.

### A. Proceeds from the Fraud Were Used By Defendant Larissa Carvalho Possebon to Purchase a Miami Condominium

The money stolen from MLS and Gerald through the fraudulent scheme was disbursed to Possebon's friends, family, and business associates. *See* Stolz Decl., ¶ 7.

Through an investigation undertaken by counsel, it has been determined that some of the proceeds were used to purchase an oceanfront condo in the name of Diego Possebon's wife, Larissa Carvalho Possebon (**"Mrs. Possebon"**). *See id.*, ¶ 8. More specifically, in February 2023, Larissa Possebon entered into an agreement with Miami Waterfront Ventures, LLC (**"Miami Waterfront"**) to purchase a pre-construction condominium unit (Unit 2601) at the Una Condominium in Miami, Florida, for $5,875,000 (the "**Condominium**"). *See id.* Monique P. Levy (**"Levy"**), Possebon's sister, acted as the purchasing agent and broker. *See id.* Fidelity National Title Insurance Co. (**"Fidelity"**) served as the title company and escrow agent. *See id.*

At Mr. Possebon's direction, MLS and certain of Mr. Possebon's co-defendants wired over $6.5 million to Levy and Fidelity for the purchase. *See id.*, ¶ 9. Fidelity and Miami Waterfront are also named as defendants in this case because they, respectively, hold $3,662,500 and $912,500 in proceeds from the scheme in bank accounts in the United States, which the Trustee seeks to recover. *See id.* Fidelity has frozen the funds in its possession and, through its counsel, has advised counsel for the Trustee that Fidelity is prepared to interplead those funds. *See id.*, ¶ 10, Exhibit A.

3

In light of these developments, the Trustee intends to move for summary judgment as to the funds being held by Fidelity and Miami waterfront. *See id.*, ¶ 11.

### B. The Trustee Seeks to Serve Mrs. Possebon Through Her Personal Email Address, Her U.S.-Based Attorney, and Her Agent and Broker for the Miami Condominium Purchase

Through the Motion, the Trustee seeks an order from the Court granting permission to serve Mrs. Possebon with the Complaint and Summons, and with the Trustee's forthcoming motion for summary judgment, through her personal email address, her U.S.-based attorney, and her broker and purchasing agent for the Miami condominium purchase.

Based on an investigation undertaken by counsel in Brazil, the Trustee has learned that Mrs. Possebon resides in Brazil at Rua Germano Peterson Junior, 433, ap. 1001, Auxiliadora, Porto Alegre/RS, CEP 90540-140 in Brazil. *See* Nasser Decl., ¶ 7.

Brazil, like the United States, is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (the "Hague Convention"). *See id.*, ¶ 4. Although the Trustee has already initiated service of process through the Hague Convention, service of an international process on Brazilian residents under the Convention's procedures is extremely lengthy and time-consuming. *See id.*, ¶ 8. According to data provided by the Brazilian Superior Court of Justice, the court which conducts the process in Brazil upon the Brazilian Central Authority's request, the average processing time for cooperation requests in 2023 was 170 days. *See id.* Therefore, it could take six months, if not more, to serve Mrs. Possebon in this matter through the Hague Convention's procedures. *See id.* This extraordinary delay will hamper the Trustee's efforts to recover the proceeds of the defendants' fraud in this matter, including the funds being held by Fidelity and Miami Waterfront.

Service of the Complaint and Summons and the Trustee's forthcoming motion for summary judgment can be accomplished through sending those documents to Mrs. Possebon: (i) through her personal email address; (ii) through Jorge D. Guttman, Esq., the U.S.-based attorney of Mrs. Possebon who represented Mrs. Possebon in connection with the Miami condominium purchase; and (iii) through Monique P. Levy, who was the purchasing agent and broker for the Miami condominium purchase by Mrs. Possebon.

The Trustee has identified Mrs. Possebon's personal email address, larissapossebon@gmail.com, in correspondence between Mrs. Possebon and Miami Waterfront concerning a default by Mrs. Possebon under the terms of the agreement to purchase the Condominium. *See* Stolz Decl., ¶ 14, Exhibit B. In addition, Mrs. Possebon's attorney, Mr. Guttman, has represented Mrs. Possebon in negotiations concerning the funds she sought to use to purchase the Condominium at issue in 2023 and has stated in correspondence with Miami Waterfront that he represents Mrs. Possebon. *See id.*, ¶ 15, Exhibit C.

As noted above, the Trustee seeks to move expeditiously for summary judgment with respect to the funds that Mrs. Possebon used to purchase the Miami Condominium, which Fidelity is currently holding and has advised it is prepared to interplead. *See id.*, ¶¶ 10-11.

The Trustee, therefore, respectfully asks the Court to issue an order allowing for alternate service on Mrs. Possebon under Federal Rule of Civil Procedure 4(f)(3) both to provide her with notice of this lawsuit and the Trustee's forthcoming motion for summary judgment.

### III.     ARGUMENT

####   A.    The Court Should Enter an Order Permitting Alternative Service on Defendant Larissa Possebon

#####     1.    Legal Standard

Under the Federal Rules of Civil Procedure, "[t]here is no strict requirement that a plaintiff pursue service through an international agreement before asking a court's assistance in ordering alternative service, and the decision of whether to allow that service is committed to the sound discretion of the district court." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655, 2020 WL 1508748, at *14 (S.D.N.Y. Mar. 30, 2020).

Rule 4(f) of the Federal Rules of Civil Procedure authorizes service upon individuals in foreign countries in three ways: "(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention]; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice ...; or (3) by other means not prohibited by international agreement, as the court orders." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 340 (E.D.N.Y. 2021) (citing Fed. R. Civ. P. 4(f)).

Courts "have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f)." *Grp. One Ltd.* 523 F. Supp. 3d at 340 (collecting cases); *Aquapaw Brands LLC v. Yan-Peng*, 2:21-CV-01784-CCW, 2023 WL 3538551, at *2 (W.D. Pa. May 18, 2023) ("It is well-established that Rule 4(f)(3) is 'neither a last resort nor extraordinary relief .... it is merely one means among several which enables service of process on an international defendant.'") (quoting *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). Thus, "nothing in Rule 4(f) itself ... suggests that a court must always require a litigant to first exhaust the potential for service under the Hague Convention before granting an order permitting alternative service under Rule

6

4(f)(3)." *Grp. One Ltd.*, 523 F. Supp. 3d at 341 (citing *In re Fairfield Sentry Ltd.*, No. 10 13164 (SMB), 2020 WL 7345988, at *11 (Bankr. S.D.N.Y. Dec. 14, 2020)). Rather, the decision to allow alternative methods of service is committed to the sound discretion of the district court. *Merrimack Mut. Ins. Co. v. New Widetech Industries Co. Ltd.*, No. 3:20-cv-546 (MPS), 2020 WL 5879405, at *1 (D. Conn. Oct. 2, 2020).

Under Federal Rule of Civil Procedure 4(f)(3), a district court has "broad authority to order an alternative method of service to be effectuated upon foreign defendants if the alternative method is not prohibited by international agreement and is reasonably calculated to give notice to the defendants." *MCC Int'l Corp.*, 2023 WL 5659064 at *3; *see also U.S. Secs. and Exchange Commission v. Vuuzle Media Corp.*, No. 21-1226, 2021 WL 1731947, at *1 (D.N.J. May 3, 2021).

**2. The Proposed Methods of Service Are Permissible and Are Reasonably Calculated to Provide Notice to Mrs. Possebon**

Here, the Trustee proposes serving Mrs. Possebon through her personal email and also through her U.S.-based attorney and U.S.-based purchasing agent and broker. Service by email is not prohibited by the Hague Convention, and numerous courts across the country have specifically held that serving a Brazilian resident via email and through a U.S.-based attorney is permissible and comports with due process. In *MCC Int'l Corp.*, 2023 WL 5659064, for example, the Court granted the plaintiff permission to serve two Brazilian nationals—one using his personal email and another through his attorney. With respect to both methods of service, the court explained, among other things, that "Brazil has not expressly objected to the proposed forms of service," and therefore, "the Court finds that service via email or through an attorney for a defendant located in Brazil are not prohibited by international agreement." Several other decisions across the country are in accord. *Id.* at *4. *See, e.g.*, *In re Cattle Antitrust Litig.*, No. CV 19-1129, 2021 WL 7757881, at *17–18 (D. Minn. Sept. 14, 2021) (approving service on U.S.-based counsel for defendant

7

located in Brazil); *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 CV. 8118, 2018 WL 6253877, at *6–10 (S.D.N.Y. Sept. 21, 2018) (same); *OC Glob. Partners, LLC v. Adaime*, No. 21-CV-10686, (S.D.N.Y. filed Jan. 20, 2022) (ECF No. 11) (granting motion for alternative service on a defendant located in Brazil).

Although Brazil has lodged an objection to Article 10 of the Hague Convention regarding service by mail, courts "have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means." *Grp. One Ltd.*, 523 F. Supp. 3d at 343 (collecting cases); *see also ShelterZoom Corp. v. Goroshevsky*, No. 19-CV-10162 (AJN), 2020 WL 4252722, at *2 (S.D.N.Y. July 23, 2020) ("'[n]umerous courts have held that service by email does not violate any international agreement,' even when a country objects to Article 10 of the Hague Convention") (internal citation and quotation marks omitted); *see also Equipav S.A.*, 2022 WL 2758417 at *3 (permitting service by email on the defendant's counsel for reasons including that "'[c]ourts in the Second Circuit have generally found that email is not a postal channel and that service by email is authorized if the signatory country has not explicitly objected to service by electronic means.'") (internal citation omitted); *Browne v. Donalds*, No. 2:21-CV-02840-AB-AFM, 2023 WL 4626697, at *2 (C.D. Cal. Apr. 13, 2023) ("to the extent Brazil, Mexico, and Argentina have objected to service by postal channels under Article 10 of the Hague Service Convention, this does not prohibit service by email specifically, as courts have distinguished electronic mail from postal mail.")

Moreover, courts have found that "'[s]ervice by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.'" *Pearson Educ. Inc. v. Doe 1*, No. 18-CV-7380-PGG-OTW, 2019 WL 6498305 at *3 (S.D.N.Y. Dec. 2, 2019) (quoting *F.T.C. v. PCCare247 Inc.*, No. 12-CV-7189 (PAE), 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7,

8

2013)). Generally, a movant need only show "some facts" indicating that the person to be served would be likely to receive the materials at the given email address. *ShelterZoom Corp.*, 2020 WL 4252722, at *2 (*citing NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014)). Here, service by email to Mrs. Possebon's personal email and to her counsel and real estate purchasing agent/broker, both of whom are based in Miami, is reasonably calculated to provide her with the requisite notice that due process requires. Notably, Mrs. Possebon used her personal email address in connection with the purchase of the Miami Condominium for approximately $6 million, *see* Stolz Decl., ¶ 14, which shows she uses that address to correspond regarding important business transactions. And, when Miami Waterfront issued a notice of default to Mrs. Possebon at that email address, Mrs. Possebon's lawyer responded the very next day, *see id.*, ¶ 15, Exhibits B and C, indicating that Mrs. Possebon received the email notice of default and quickly consulted with her attorney. That sequence of events shows that Mrs. Possebon uses her personal email and is in regular contact with her attorney, and that she and counsel can communicate and exchange information, including at short notice. Similarly, the amount of money at issue in connection with the purchase of the condominium in Miami, the role played by Monique Levy on Mrs. Possebon's behalf, and the fact that Mrs. Possebon is married to Monique Levy's brother, *see id.*, ¶ 8, suggest that Mrs. Possebon and Monique Levy regularly communicate, and that documents served through Monique Levy would reach Mrs. Possebon.

### 3. Service By Alternate Means is Permissible Where, As Here, Service Through the Hague Convention Would Cause Months of Delay

Although the Trustee has begun the process of serving Mrs. Possebon with the Complaint through the Hague Convention, that process is likely to take at least six months, if not more, to complete. *See* Nasser Decl., ¶ 8. Under these circumstances, and given the Trustee's intention to

9

swiftly move for summary judgment to recover the proceeds of the fraud used to purchase the Miami Condominium, the requested service on Mrs. Possebon by alternative means is appropriate.

Several courts have held that where, as here, it will take months to successfully serve a defendant through the Hague Convention, service through alternate means is appropriate. In *MCC Int'l Corp.*, 2023 WL 5659064 at *1, for example, the plaintiff had begun the process to serve the Brazilian residents using the Hague Convention but was advised that the process "could take eight to twelve months." The court found that where "failure to permit alternate service will result in unduly long delays in the litigation," alternative service was warranted. *Id.* at *2. Similarly, in *Equipav S.A.*, 2022 WL 2758417, at *1, the court recently permitted a plaintiff in U.S. litigation to serve a Brazilian defendant through its prior counsel by email when the plaintiff had "begun the process of serving . . . pursuant to the Hague Convention," but Brazilian authorities informed the plaintiff "that the average time for completing service is seven to twelve months." *See also Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) ("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods[.]'") (internal citation omitted); *Smith v. SMS Grp.*, 22-cv-1303-DWD, 2022 WL 15460279, at *3-4 (S.D. Ill. Oct. 27, 2022) (permitting service by email when Plaintiff "initiated service under the Hague Convention" and was "told the process will take another six to twelve months."); *Element Capital Commercial Co. v. BOE Tech. Grp. Co.*, Civil Action 2:22-CV-00118-JRG, 2022 WL 4368162, at *3 (E.D. Tex. Sep. 21, 2022) ("courts have recognized that the multi-month delay of service under the Hague Convention supports a grant of alternative service under Rule 4(f)(3)").

In this case, serving Mrs. Possebon by the requested alternative means is particularly appropriate given that Fidelity is holding the proceeds of the fraud, which the Trustee seeks to

10

expeditiously recover through a summary judgment motion. *Cf. Apex.AI, Inc. v. Langmead*, 23-cv-02230-BLF, 2023 WL 3391962, at *5 (N.D. Cal. May 10, 2023) (granting a motion for alternate service when the plaintiff sought urgent relief to safeguard its trade secrets).

## IV. CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests that the Court grant the Motion and issue an Order allowing for alternative service under Federal Rule of Civil Procedure 4(f) on Mrs. Possebon.

Dated: June 7, 2024

**GENOVA BURNS LLC**

*/s/ Daniel M. Stolz*
Daniel M. Stolz, Esq.
440 Broad Street
Newark, New Jersey 07102
DStolz@genovaburns.com
(973) 533-0777

**CALCAGNI & KANEFSKY LLP**

*/s/ Eric T. Kanefsky*
Eric T. Kanefsky, Esq.
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
eric@ck-litigation.com
(862) 397-1796

*Attorneys for Plaintiff,*
*Edwin H. Stier, Esq., as Wind Down Trustee*
*for MLS Berkowitz Investments, LLC*

11