# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------X

| | |
|---|---|
| EDWIN H. STIER, ESQ., AS WIND DOWN TRUSTREE FOR MLS BERKOWITZ INVESTMENTS, LLC, | : : : : | Case No. 3:24-cv-04647-ZNQ-RLS |
| Plaintiff, | : : | **Motion Day: September 3, 2024** |
| v. | : : | |
| DIEGO POSSEBON, *et al.*, | : : : | |
| Defendants. | : | |

-----------------------------------------------------X

## LARISSA CARVALHO POSSEBON'S BRIEF IN OPPOSITION TO TRUSTEE'S MOTION FOR ALTERNATIVE SERVICE

Philip A. Goldstein
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Email: pagoldstein@mcguirewoods.com

*Counsel for Larissa Carvalho Possebon for the Limited Purpose of Addressing Motion for Alternative Service*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................1

    A.    The Hague Convention Process is Ongoing and Working as Intended, Therefore Nullifying the Need for Alternative Service ........1

ARGUMENT .......................................................................................................4

    A.    The Hague Convention Controls and Brazil Does Not Allow for Service by Email ................................................................................4

        1.    Legal Standard .........................................................................4

        2.    Plaintiff's Proposed Method of Service By Email Is Not Permissible Under the Hague Convention..................................7

    B.    Rule 4(f) Service on the U.S.-Based Attorney Who Represented Possebon In A Prior Matter is Not Allowed .....................................12

        1.    Legal Standard .......................................................................12

        2.    Plaintiff Offers No Basis to Infer that Possebon Conferred Express or Implied Authority for Florida Counsel in a Prior Matter to Receive Service in the Instant Matter ......................14

    C.    Rule 4(f) Service On a Broker and Purchasing Agent Who Acted on Behalf of Possebon is Not Appropriate Regardless of Any Familial Connections .........................................................................................17

CONCLUSION ..................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*,
    334 F.R.D. 465 (D. Mass. 2020) .................................................................5, 12

*Carlson v. Hannah*,
    6 N.J. 202 (1951) ........................................................................................13

*CRS Recovery, Inc. v. Laxton*,
    No. C 06-7093 CW, 2008 WL 11383537 (N.D. Cal. Jan. 8, 2008) ....................5

*Equipav S.A. v. Bertin*,
    2022 WL 2758417 (S.D.N.Y. July 14, 2022) ..................................................7, 8

*Facebook, Inc. v. 9 XIU Network (Shenzhen) Tech. Co., Ltd.*,
    480 F. Supp.3d 977 (N.D. Cal. 2020) ..............................................................11

*FingerMotion, Inc. v. Capybara Research*,
    2024 WL 81818 (S.D.N.Y. Jan. 8, 2024) .........................................................2, 3

*Gelber v. Kirsch*,
    2015 WL 1471960 (D.N.J. Mar. 30, 2015) .......................................................17

*Kadmon Corp., LLC v. Ltd. Liability Co. Oncon*,
    2023 WL 2346340 (S.D.N.Y. Mar. 3, 2023) .......................................................6

*Mandale v. Des Moines Tria Tower*,
    2009 WL 2412596 (E.D. Pa. Aug. 5, 2009) ......................................................17

*Prem Sales, LLC v. Guangdong Chigo Heating and Ventilation
    Equip.*,
    494 F. Supp.3d 404 (N.D. Tex. 2020) .........................................................*passim*

*Reckling v. Okechuku*,
    2007 WL 2473831 (D.N.J. Aug. 27, 2007) .................................................13, 15

*Sanchez-Llamas v. Oregon*,
    126 S.Ct. 2669 (2006)....................................................................................9, 10

*Schwarz v. Thomas*,
   98 U.S.App.D.C. 365, 222 F.2d 305 (1955) ........................................................13

*SEC v. MCC Int'l Corp.*,
   2023 WL 5659064 (S.D. Fla. Mar. 8, 2023) .....................................................7, 8

*Smart Study Co., Ltd. v. Acuteye-Us*,
   620 F. Supp.3d 1382 (S.D.N.Y. 2022) ....................................................5, 7, 8, 10

*Stebbins v. Garcia Baz*,
   2024 WL 3447507 (N.D. Cal. July 16, 2024) .......................................................4

*Stone v. Bank of Commerce*,
   19 S.Ct. 747 (1899).............................................................................................12

*The Amiable Isabella*,
   6 Wheat. 1, 5L.Ed. 191 (1821) ...........................................................................10

*In re The Muralo Co., Inc.*,
   295 B.R. 512 (Bankr. D.N.J. 2003) .....................................................................13

*U.S. v. Barry Fischer Law Firm, LLC*,
   2011 WL 31545 (S.D.N.Y. Jan. 5, 2011) ..............................................................3

*U.S. v. Bosurgi*,
   343 F. Supp. 815 (S.D.N.Y. 1972) ..........................................................12, 13, 15

*U.S. v. Ziegler Bolt & Parts, Co.*,
   111 F.3d 878 (Fed. Cir.1997) .............................................................................14

*United States v. Davis*,
   38 F.R.D. 424 (N.D.N.Y. 1965) ..........................................................................13

*United States v. Marple Community Record, Inc.*,
   335 F. Supp. 95 (E.D. Pa. 1971) ...................................................................12, 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988).............................................................................................12

*Wash. St. Inv. Bd. v. Odebrecht S.A.*,
   2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018) ......................................................3

**Other Authorities**

Fed. R. Civ. P. 4(f) ..................................................................................7, 8, 12, 17

Fed. R. Civ. P. 4(f)(3) ........................................................................................5, 6

1 Restatement (Third) of Foreign Relations Law of the United States §
  325(1) 1986 ...................................................................................................10

Hague Service Convention on the Service Abroad of Judicial and
  Extra Judicial Documents in Civil and Commercial Matters, Nov.
  15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ........................................................1

U.S. Department of State – Bureau of Consular Affairs, "Brazil
  Judicial Assistance Information,"
  https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-
  Country-Information/Brazil.html (last visited Aug. 6, 2024)..............................2

## INTRODUCTION

Defendant Larissa Carvalho Possebon ("Possebon") respectfully opposes Plaintiff Edwin H. Stier, Esq., as wind down trustee for MLS Berkowitz Investments, LLC's ("Trustee" or "Plaintiff") Motion for Alternative Service. Dkt. #88. While complaining of delays associated with compliance with the provisions of the Hague Convention, Plaintiff fails to identify that the process of international service in Brazil is playing out as it is intended to do so. Further, Trustee does not establish why it would be proper to serve Possebon via email in violation of international treaty. Nor does Plaintiff establish why the Court should allow service to a U.S.-based attorney who does not represent Possebon in any capacity. Finally, Plaintiff does not establish why service should be permitted to Possebon's former broker and purchasing agent.

Accordingly, as further explained herein, Possebon respectfully asks the Court to allow the Hague Convention process to play out, as intended, and deny Trustee's motion.

## BACKGROUND

**A.    The Hague Convention Process is Ongoing and Working as Intended, Therefore Nullifying the Need for Alternative Service**

Effective June 1, 2019, the Federative Republic of Brazil agreed to the Hague Service Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163

1

("Hague Convention" or "Convention"), for the serving of process and other documents across international boundaries.[1]

Despite this general approval, Brazil objected to Article 8 and Article 10 of the Hague Convention, which allow for additional methods of service of process, including service by mail/post office. *FingerMotion, Inc. v. Capybara Research*, 2024 WL 81818, at *1 (S.D.N.Y. Jan. 8, 2024).

Article 8 states:

> Each Contracting State shall be free to effect service of judicial documents upon persons abroad, without application of any compulsion, directly through its diplomatic or consular agents. Any State may declare that it is opposed to such service within its territory, unless the document is to be served upon a national of the State in which the documents originate.

Article 10 states:

> Provided the State of destination does not object, the present Convention shall not interfere with – a) the freedom to send judicial documents, by postal channels, directly to persons abroad, b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

---

[1] *See* U.S. Department of State – Bureau of Consular Affairs, "Brazil Judicial Assistance Information," https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Brazil.html (last visited Aug. 6, 2024).

Brazil is also a signatory to the Inter-American Convention on Letters Rogatory. *Id.*; *see also Wash. St. Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018); *U.S. v. Barry Fischer Law Firm, LLC*, 2011 WL 31545, at *4 (S.D.N.Y. Jan. 5, 2011). As a result, Brazil permits only one method of service if the defendant does not otherwise waive service: service through its Central Authority. *Wash. St. Inv. Bd.*, 2018 WL 6253877, at *4.

As Plaintiff states, the process of services through the Brazilian Superior Court of Justice has already begun in earnest. Dkt. #88-1 at pg. 5. Contrary to Plaintiff's request, the process, as identified in international treaty, is playing out *as designed.* To that end, Possebon attaches the Letters Rogatory regarding Possebon in the original Portuguese as well as an unofficial translation into English as Exhibits 1 and 2 to the Declaration of Philip A. Goldstein ("Goldstein Decl."), respectively.[2]

As a result, the Court need not interfere with the ongoing, mandated procedures. As indicated herein, the purported "delays" associated with the process are not unreasonable and, therefore, do not necessitate court intervention.

---

[2] Please note: Possebon is able to provide an official translation of the rogatory letters, if requested.

## **ARGUMENT**

**A.    The Hague Convention Controls and Brazil Does Not Allow for Service by Email**

### 1.    Legal Standard

The Convention's language is mandatory "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad" and both countries are signatories. *Stebbins v. Garcia Baz*, 2024 WL 3447507, at *2 (N.D. Cal. July 16, 2024), *quoting Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("[C]ompliance with the Convention is mandatory in all cases to which it applies."). Indeed, the Hague Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' whenever it applies." *Stebbins*, 2024 WL 3447507, at *2, *quoting Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017).

Further, United States courts have held that the Convention does not allow service by email in Brazil. In *Stebbins*, the court reasoned that the Hague Convention's structure suggests that methods of service *not* specified by the Convention are prohibited unless the countries consent to an alternative method of service. *See Stebbins*, 2024 WL 3447507, at *3. Indeed, the presence of provisions outlining specific methods of service would "hardly be necessary if the Convention generally permitted any means of service that are not explicitly authorized or

4

prohibited by its text." *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020).

Federal court precedent indicates that the Hague Convention outlines specific methods of service, and that methods of service such as email that are not specifically authorized are impermissible under the Convention. *Smart Study Co., Ltd. v. Acuteye-Us*, 620 F. Supp.3d 1382, 1393 (S.D.N.Y. 2022), *citing Anova Applied Elecs.*, 334 F.R.D. at 472 ("To permit service by e-mail would bypass the means of service set forth in the Convention."); *see also CRS Recovery, Inc. v. Laxton*, No. C 06-7093 CW, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008) ("An order allowing email service on a defendant located in China would contravene the treaty and is not permitted under Rule 4(f)(3).").

Further, courts have held that while a country's objection to service by postal channels does not "in an of itself" prohibit email service, such service is nevertheless proscribed by the Convention because it is inconsistent with the Convention's authorized service methods. *See, e.g.*, *Prem Sales, LLC v. Guangdong Chigo Heating and Ventilation Equip.*, 494 F. Supp.3d 404, 417 (N.D. Tex. 2020).

Notably, Articles 11[3] and 19[4] permit signatories to the Convention to consent, either unilaterally or with another party, to means of service not authorized by the Convention. *Id.* Brazil has not entered into an agreement with the U.S. permitting email service.

Similarly, courts have found that when a country objects to Article 10 of the Convention, Fed. R. Civ. P. 4(f)(3) does not permit service by email. *Kadmon Corp., LLC v. Ltd. Liability Co. Oncon*, 2023 WL 2346340, at *4 (S.D.N.Y. Mar. 3, 2023). In *Kadmon*, Russia's objection to service by mail *necessarily* carried with it an objection to service by email. *Id.* Citing *Smart Study*, the Southern District of New York clarified that the Convention "is meant to set forth simple and certain methods of service that can be used to serve foreign litigants…Thus, the fact that the Convention does not mention a particular method of service does not mean that such method is approved." *Kadmon*, 2023 WL 2346340, at *4, *citing Smart Study*, 620 F. Supp.3d at 1396 ("To infer that the Convention's silence as to a particular method

---

[3] Art. 11 reads as follows: "The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities."

[4] Art. 19 reads as follows: "To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions."

equates to an implied permission to use virtually *any* method of service not proscribed by the Convention contravenes that purpose." (emphasis in original).

Similarly, courts have been unmoved by a plaintiff's claim that their request is urgent given the circumstances faced. For example, in *Smart Study*, the Southern District of New York ruled against a plaintiff's request for email service on defendants overseas because Rule 4(f) does not contain an exigent circumstances exception. *Smart Study*, 620 F. Supp.3d at 1397.

### 2.     Plaintiff's Proposed Method of Service By Email Is Not Permissible Under the Hague Convention

Despite already initiating service of process through the appropriate Hague Convention protocols, Plaintiff requests that the Court ignore the Convention to allow for the extraordinary step of allowing email service to Possebon, among other requests. Plaintiff is mistaken that the proposed method of email service to Possebon is permitted; it is not, by the terms of the Convention and by virtue of a reasonable interpretation of Brazil objection to Art. 10.

First, neither of the cases relied upon by Trustee—*Equipav S.A. v. Bertin*, 2022 WL 2758417 (S.D.N.Y. July 14, 2022) and *SEC v. MCC Int'l Corp.*, 2023 WL 5659064 (S.D. Fla. Mar. 8, 2023)[5]—are availing. In *Equipav*, the plaintiff, a

---

[5] Notably, neither of the cases relied upon by Plaintiff is from the District Court of New Jersey. As a result, while Possebon acknowledges that precedent in this District is minimal, neither case cited by Plaintiff is binding on this Court.

Brazilian corporation with its principal place of business in São Paulo, was attempting to confirm a foreign arbitration award against an individual residing in Brazil. *Equipav*, 2022 WL 2758417, at *1. Such facts are entirely distinguishable from Plaintiff's complaint. The facts are similarly unavailing in *MCC Int'l Corp.*, where a federal agency sought to effect service and where prior attempts at "Hague service" had been unsuccessful. *MCC Int'l Corp.*, 2023 WL 5659064, at *2.

Second, in both of the cited cases, the delays contemplated by the courts are far longer than in the instant case. In *Equipav*, Brazilian authorities informed the plaintiffs that the average time for completing service was "seven to twelve months." *Equipav*, 2022 WL 2758417, at *1. In *MCC Int'l Corp.*, the SEC was told that effective service would take between "eight and twelve months." *MCC Int'l Corp.*, 2023 WL 5659064, at *1. Plaintiff here represents that Brazilian authorities have informed it service takes an average of "170 days," much less than the representations made in either *Equipav* or *MCC Int'l Corp.* Dkt. #88-1 at pg. 5 and Dkt. #88-3 at ¶8.

Even so, courts have not viewed "significant" delays as sufficient reason to ignore the Convention requirements. In *Smart Study*, the court acknowledged "the risk of significant delay," but concluded that the Court may not "ignore the text of Rule 4(f) [and] the Hague Convention…in order to make service more efficient for Plaintiff." *Smart Study*, 620 F. Supp.3d at 1402.

8

Plaintiff justifies its request with a doomsday prediction of "extraordinary delay[s]" that will "hamper" Trustee's efforts to recover the proceeds of the alleged fraud. Dkt. #88-1 at pg. 8. Notably, Plaintiff does not explain how its efforts, assuming that they are successful, to recover funds from Fidelity and Miami Waterfront will, in fact, be hampered.

Even while acknowledging Brazil's objection to Article 10, Plaintiff next turns to an argument that requires the Court to read into the Hague Convention provisions that *do not exist* in the Convention terms. Specifically, that because email service is not explicitly objected to, it is permitted. Such an untethered and unmoored reading of the Convention undermines the terms of the Convention and renders the explicit provisions meaningless.

The Court should refuse Plaintiff's overbroad interpretation of the Hague Convention for a number of reasons. First, Trustee's generous approach to judicial interpretation of an international treaty should be rejected. A major assumption of courts' reasoning allowing email service under the Hague Convention is that if a means of service is not specifically prohibited by the Convention, it must be permitted. *See Prem Sales, LLC*, 494 F. Supp.3d at 415–16.

However, the Supreme Court has held that "[a]n international agreement is to be interpreted in good faith in accordance with the ordinary meaning to be given to its terms in their context and in the light of its object and purpose." *Sanchez-Llamas*

9

*v. Oregon*, 126 S.Ct. 2669, 2679 (2006), *quoting* 1 Restatement (Third) of Foreign Relations Law of the United States § 325(1) 1986. The Supreme Court concluded that if a court were to interpret terms into the treaty without authority in the treaty itself, the court "would in effect be supplementing those terms" which would be "entirely inconsistent with the judicial function." *Id.*, *quoting The Amiable Isabella*, 6 Wheat. 1, 71, 5L.Ed. 191 (1821) ("[T]o alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions. It would be to make, and not to construe a treaty."). In doing so, the Supreme Court also held that where a treaty does not provide a particular remedy—either expressly or implicitly—"it is not for the federal courts to impose…through lawmaking of their own." *Id.* at 2680.

To infer that the Convention's silence on a particular method of service equates to implied permission would render the provisions of the Convention meaningless, insert implied permission to use virtually *any* method of service not explicitly proscribed, and run afoul of the Convention's express function. The purpose of the Convention was "to set forth simple and certain methods of service that can be used to serve foreign litigants." *Smart Study*, 620 F. Supp.3d at 1396. To read methods of service into the Convention—especially against the opposition of

the nation receiving service—is to make a treaty, rather than serve the judicial purpose of interpreting it.

Second, Plaintiff's reasoning fails to account for the express terms of Article 10. While Trustee is correct that certain other courts have found that "email is not a postal channel" (*See*, Dkt. #88-1 at pg. 12), countries, including Brazil, objected to Article 10 because, by its clear language, the service methods identified were "specifically permitted *unless objected to*." *Prem Sales*, 494 F. Supp.3d at 416. (emphasis in original). The same cannot be said of email service; there is no reason for a nation to affirmatively object to a service method that is not authorized or identified because the Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service where it applies." *Id*., *quoting Water Splash, Inc.*, 137 S.Ct. at 1507; *accord Facebook, Inc. v. 9 XIU Network (Shenzhen) Tech. Co., Ltd*., 480 F. Supp.3d 977, 983 (N.D. Cal. 2020) (noting that "China affirmatively objected to service 'by postal channels' because service 'by postal channels' is expressly permitted by the Convention," but further observing that because the "Convention doesn't offer service by e-mail as an option ... there was no reason for China to affirmatively object to it.").

Further, the court in *Prem Sales* was persuaded that even if a foreign nation's objection to service by postal channels did not in and of itself prohibit email service, such service is nevertheless proscribed by the Convention because it is inconsistent

with the Convention's authorized service methods. *Prem Sales*, 494 F.Supp.3d at 417. As the Supreme Court has held, the Convention "pre-empts inconsistent methods of service…[wherever] it applies." *Schlunk*, 108 S.Ct. at 2104. The court in *Anova* ultimately concluded that "[t]o permit service by email would bypass the means of service set forth in the Convention. *Anova*, 334 F.R.D. at 472, *citing Luxottica Grp. S.p.A. v. Partnerships and Unincorporated Assocs.*, 391 F. Supp.3d 816, 827 (N.D. Ill. 2019).

Thus, this Court should determine that email service on Possebon is not permitted under the Convention because it is inconsistent with and not authorized by the Convention's delineated service methods.

## B.    Rule 4(f) Service on the U.S.-Based Attorney Who Represented Possebon In A Prior Matter is Not Allowed

### 1.    Legal Standard

It is a generally accepted truism that an attorney, solely by reason of his or her capacity as an attorney, does not thereby become his client's agent authorized by "appointment…to receive service of process." *U.S. v. Bosurgi*, 343 F. Supp. 815, 817 (S.D.N.Y. 1972), *citing Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir.), *cert. denied*, 91 S.Ct. 2205 (1971); *United States v. Marple Community Record, Inc.*, 335 F. Supp. 95, 101 (E.D. Pa. 1971); *cf. Stone v. Bank of Commerce*, 19 S.Ct. 747 (1899). Nor is the fact that an attorney represents his or her client in a completely unrelated litigation sufficient to establish the requisite authority. *Bosurgi*, 343

F.Supp. at 817, *citing Schultz v. Schultz*, 436 F.2d 635, 639 (7th Cir. 1971); *Schwarz v. Thomas*, 98 U.S.App.D.C. 365, 222 F.2d 305, 307–308 (1955).

What courts do require, however, is that it appear that the attorney was authorized, either expressly or impliedly, to receive service of process for his or her client. *Bosurgi*, 343 F.Supp. at 817, *citing Christensson v. Hogdal*, 199 F.2d 402, 404 n. 3 (1952); *Marple Cmty. Record*, 335 F. Supp. at 101. Where such agency is to be implied, it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer. *Bosurgi*, 343 F.Supp. at 818, *citing United States v. Balanovski*, 236 F.2d 298, 303 (2d Cir. 1956), *cert. denied*, 77 S.Ct. 357, (1957); *United States v. Davis*, 38 F.R.D. 424 (N.D.N.Y. 1965).

In this district, generally, an attorney does not necessarily become an agent authorized in every instance to receive service of process on behalf of an individual whom they represent. *Reckling v. Okechuku*, 2007 WL 2473831, at *5 (D.N.J. Aug. 27, 2007), citing *Bosurgi*, 343 F.Supp. at 817. However, service on the attorney is effective as to the client if the attorney is expressly or impliedly authorized to accept service for the client. *Id.* Implied authority can be inferred from the particular conduct in question, and from the particular circumstances in the case. *Reckling*, 2007 WL 2473831, at *5, *citing Henningsen v. Bloomfield Motors*, 32 N.J. 358, 374 (1960); *Carlson v. Hannah*, 6 N.J. 202, 212 (1951); *In re The Muralo Co., Inc.*, 295

13

B.R. 512, 518 (Bankr. D.N.J. 2003); *U.S. v. Ziegler Bolt & Parts, Co.*, 111 F.3d 878, 881 (Fed. Cir.1997).

    **2.**    **Plaintiff Offers No Basis to Infer that Possebon Conferred Express or Implied Authority for Florida Counsel in a Prior Matter to Receive Service in the Instant Matter**

As an initial matter, the Plaintiff's statement that Mr. Jorge Guttman, Esq. "represented Mrs. Possebon in connection with the Miami condominium purchase" is not accurate. As explained the Declaration of Jorge Guttman ("Guttman Decl."), Guttman did not represent Possebon during the Miami condominium purchase. *See* Guttman Decl. at ¶ 5**.** Rather, Guttman represented Possebon in a Miami-Dade County civil action filed on July 5, 2023 and, subsequently, voluntarily dismissed on September 21, 2023. *See id.* at ¶ 7, Exh. A. Guttman's correspondence, at Dkt. #88-7, was incident to the Miami-Dade County civil case representation. *See id.* at ¶ 8. Notably, Guttman never entered an appearance in the Miami-Dade County action. *See id.* at ¶ 7.

Even if Guttman previously represented Possebon, Plaintiff offers no reasonable basis for the Court to conclude that counsel on a prior matter– that was voluntarily dismissed over ten (10) months ago – is authorized to accept service on her behalf in the instant case. In fact, Plaintiff—in a tacit acknowledgement that its request has no legal basis—provides *no* legal authority upon which to conclude that an attorney that previously represented a defendant on a prior matter and no longer

represents that client should be considered an authorized agent of a defendant. Instead, Plaintiff leaves it to the Court to infer that the inclusion of the condominium in both matters serves as a sufficient nexus to link the instant action with Guttman's prior representation.

It does not. In reality, Guttman is not expressly or impliedly authorized to accept service under the law, nor do the facts require that he be subject to service on behalf of Possebon. As a result, the Court should not permit service upon him.

As a matter of law (and fact), Guttman has not been expressly or impliedly authorized by Possebon to receive service on her behalf. *See* Guttman Decl. at ¶¶ 9, 10. Under *Bosurgi* and the precedents of this Court, an attorney does not necessarily become an agent authorized in *every* instance to receive process on behalf of an individual whom they represent. *See Bosurgi*, 343 F. Supp. at 817; *Reckling*, 2007 WL 2473831, at *5 (emphasis added). Plaintiff makes no showing that Possebon gave express authorization for Guttman to receive service in the instant case. The best that Trustee can muster is evidence from September 2023—nearly seven (7) months before the complaint in the instant matter was even filed—that Guttman represented Possebon in relation to a prior matter. *See* Ex. C to Dkt. #88-7. Unfortunately for Plaintiff, such representation is not sufficient to confer express authorization on Guttman.

15

Similarly, Plaintiff does not show, nor does Plaintiff attempt to show, that Possebon impliedly authorized Guttman to accept service on her behalf. Plaintiff does not conduct this attempt because there is no evidence to suggest that Possebon impliedly authorized service. Rather, Plaintiff states that Guttman responded to a notice of default from Miami Waterfront Ventures, LLC on the condominium "the very next day." Dkt. #88-1 at 13, citing Ex. C to Dkt. #88-7. Contrary to Plaintiff's implication, this is not evidence of implied authorization, but rather evidence of Guttman representing his client in the matter for which he was retained. *See* Guttman Decl. ¶ 8.

Rather than argue that Guttman is either expressly or impliedly authorized to accept service of process, Plaintiff asks the Court to infer that the inclusion of the condominium in both the instant case and a prior matter serves as a sufficient nexus to link the instant action with Guttman's representation in a prior matter. The Court should not make such an inference. The representation of a party in a transaction for property, does not confer representation of that same party in *all matters* related to that property. To conclude the alternative, would result in an expansion of legal representation not contemplated by the ordinary practice of law.

As a result, the Court should deny Plaintiff's request to serve Guttman.

16

**C.    Rule 4(f) Service On a Broker and Purchasing Agent Who Acted on Behalf of Possebon is Not Appropriate Regardless of Any Familial Connections**

The Court should reject Plaintiff's request to serve Possebon's sister-in-law, real estate broker, and purchasing agent. Plaintiff offers no legal justification for such service on such individual, with or without the familial connections referenced by Trustee.

Similar to Plaintiff's approach with Guttman, Trustee provides no legal authority or argument to support the request that the Court allow for process on Possebon's broker and purchasing agent. Rather, Plaintiff simply speculates that, since Possebon is married to the broker's brother, they are in regular contact and that documents served through the broker would reach Possebon.

The law regarding service of process relies upon more than just relative effectiveness and potential family connections. Rather, process can only be served on an agent when a defendant confers authority on the agent to receive service. *Mandale v. Des Moines Tria Tower*, 2009 WL 2412596, at *2 (E.D. Pa. Aug. 5, 2009); *see also Gelber v. Kirsch*, 2015 WL 1471960, at *7 (D.N.J. Mar. 30, 2015). Plaintiff offers no evidence, nor can they, that a conferral of authority to Possebon's sister-in-law, broker, and purchasing agent occurred. Nor does Plaintiff offer anything more than conjecture about what the connection between Possebon and her broker and purchasing agent may be. The Court should not rely upon speculation to

17

allow alternative service.

Similar to its approach to Guttman, Plaintiff requests that, due to a common piece of property, the Court infer a connection between a real estate transaction and the instant case. As argued above, the Court should not make such an inference. The representation of a party in a real estate transaction does not confer representation of that same party in *all matters* related to that property or, in the case of a broker and purchasing agent, that the representation did not cease the moment that the transaction was closed.

As a result, the Court should deny Plaintiff's request to allow service on Possebon's broker and purchasing agent.

## **CONCLUSION**

For the reasons set forth above, the Court should deny Trustee's motion for alternative service.

Dated: August 9, 2024              Respectfully submitted,

                                   */s/ Philip A. Goldstein*
                                   Philip A. Goldstein
                                   McGuireWoods LLP
                                   1251 Avenue of the Americas, 20th Floor
                                   New York, NY 10020-1104
                                   Telephone: (212) 548-2167
                                   Fax: (212) 548-2150
                                   Email: pagoldstein@mcguirewoods.com

                                   *Attorney for Defendant Larissa Possebon*
                                   *for the Limited Purpose of Addressing*
                                   *Motion for Alternative Service*

18