

Eric T. Kanefsky, Senior Partner
862.772.8149   eric@ck-litigation.com

August 13, 2024

**VIA ECF**
Honorable Georgette Castner, United States District Judge
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, N.J. 08608

  Re: ***Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC v. Diego Possebon, et al.*, Case No. 3:24-cv-04647-GC-RLS**

Dear Judge Castner:

  This law firm is co-counsel to Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC (the "Trustee"). We write in response to the July 31, 2024 letter from Defendant BTG Pactual S.A. ("BTG") requesting a conference with the Court regarding an anticipated motion to dismiss arguing lack of personal jurisdiction and failure to state a claim. *See* (ECF Doc. 154) (the "BTG Letter").

## I. RELEVANT BACKGROUND

  This case stems from a massive fraud perpetrated against MLS Berkowitz, LLC ("MLS"), a company trading raw metals, and its principal creditor, Gerald Metals SARL ("Gerald"). MLS and Gerald were victimized by a sophisticated conspiracy involving over 100 individuals and entities, resulting in the loss of nearly $50 million. *See* Complaint, ¶ 1. Metalsur Comercial De Acos Eireli ("Metalsur"), a Brazil-based shell company, was formed at the direction of Diego Possebon ("Possebon"), the mastermind of the fraud, to receive and immediately disburse a substantial portion of the proceeds. *Id.*, ¶¶ 325-28. Using a phony loan agreement as cover, Possebon directed MLS to wire approximately $20 million to Metalsur in structured payments from MLS's bank account in the United States, some or all of which were deposited into a Metalsur account with BTG. *Id.*, ¶¶ 329-33. The Complaint alleges that BTG Pactual aided and abetted fraud by holding, concealing, and facilitating the transfer of the proceeds of Possebon's fraud despite "glaringly obvious indicia of illicit conduct, including, but not limited to, the creation of false documents, affirmative acts of concealment, inexplicable departures from industry norms and standards, and the criminal and/or troubled histories of their co-conspirators." *Id.*, ¶¶ 391-92.

  The Trustee was appointed pursuant to a September 9, 2023 Order of the Bankruptcy Court, and his powers under that Order include the authority to seek recovery of the money that was stolen as a result of the fraud. *See id.*, ¶ 10.

  As alleged in the Complaint, the Court has jurisdiction over the case under 28 U.S.C. § 1334 because the matter arises from the related bankruptcy action for MLS Berkowitz Investments LLC. *See id.*, ¶¶ 219-20; *see also* 28 U.S.C. § 1334(b) (district courts shall have original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11"). The Third Circuit has explained that the scope of "related to" jurisdiction under 28

ck-litigation.com 862.397.1796 One Newark Center 85 Broad Street
 862.902.5458 1085 Raymond Blvd., 14th Floor Suite 17031
  Newark, NJ 07102 New York, NY 10004
  *Preferred Mailing Address*

Letter to Honorable Georgette Castner, Tuesday, August 13, 2024
Page 2 of 3

U.S.C. § 1334(b) is "extremely broad, extending to any action the outcome of which 'could conceivably have any effect on the estate being administered in bankruptcy.'" *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997) (internal citation omitted).

> Fed. R. Bankr. P. 7004(f) governs personal jurisdiction and states:
>
> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Under F.R.C.P. 4(f)(1), service is permitted "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]" Here, BTG states that it was served with process in Brazil "under the Hague Convention." *See* BTG Letter at 2.

**II.     PERSONAL JURISDICTION**

As explained above:  (i) the Trustee properly commenced this action in the District Court based on "related to" jurisdiction under 28 U.S.C. § 1334(b), and (ii) according to BTG, the Summons and Complaint were served on BTG under the Hague Convention, a manner in accordance with the subdivisions of F.R.C.P. 4, *see* Fed. R. Bankr. P. 7004(f).  The relevant inquiry is therefore whether exercise of personal jurisdiction over BTG is consistent with the Constitution and laws of the United States, not whether BTG had sufficient minimum contacts with New Jersey. *See* Fed. R. Bankr. P. 7004(f); *In re Celotex Corp.*, 124 F.3d 619, 630 (4th Cir. 1997) (whether the defendant had "minimum contacts" with the state in which the district court sits is "irrelevant" because the "sovereign exercising authority is the United States, not the individual state where the federal court is sitting."); *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996)  ("When the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States").

The Complaint alleges contact between BTG and the United States in that the funds that were wired by MLS from its United States bank account to Metalsur were deposited in Metalsur's account with BTG.  And, while BTG asserts that it has no "branches or offices" in the United States, *see* BTG Letter at 2, BTG's public website[1] indicates that BTG has a presence in New York and Miami.

In the event that BTG does move to dismiss on personal jurisdiction grounds, the Trustee should be permitted to engage in appropriate jurisdictional discovery concerning BTG's contacts with the United States.  *See, e.g.*, *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (noting that courts are "to assist the plaintiff by allowing jurisdictional discovery unless the

---

[1] *See* BTG Pactual, https://www.btgpactual.us/ (last visited August 13, 2024).

plaintiff's claim is 'clearly frivolous.'") (internal citation omitted); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) ("we have found jurisdictional discovery particularly appropriate where the defendant is a corporation"). Such discovery should address issues including those raised in the BTG Letter such as the destination of the funds obtained by Metalsur as a result of the fraud.

### III. ANY CONCERNS ABOUT THE SUFFICIENCY OF THE CLAIM AGAINST BTG CAN BE ADDRESSED BY AN AMENDED PLEADING

The Trustee submits that the Complaint sufficiently states a claim against BTG for aiding and abetting fraud in that it alleges (i) a fraudulent scheme orchestrated by Possebon and his co-conspirators, (ii) BTG's knowledge of the fraud, and (iii) BTG's assistance in the fraud by its aiding the transfer of the illicit proceeds through the Metalsur account. *See, e.g.*, *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (elements of an aiding and abetting claim are "(1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing"). And, while BTG asserts that the allegations of its knowledge are deficient, even under Rule 9(b), "intent," "knowledge," and "conditions of a person's mind may be alleged generally."

To the extent that BTG will move to dismiss on Rule 12(b)(6) grounds, the Trustee will seek to file an amended pleading including additional allegations to further support BTG's (i) knowledge of suspicious and fraudulent activities perpetrated by Metalsur through its BTG accounts, and (ii) substantial assistance to Metalsur by facilitating the transfer of the proceeds of the fraud. *See, e.g., In re TelexFree Sec. Litig.*, 626 F. Supp. 3d 253, 272 (D. Mass. 2022) ("when a bank has actual knowledge that its routine services are assisting a customer in committing a specific tort, the provision of those services may constitute substantial assistance.").

We thank the Court for its attention and consideration to this matter.

Respectfully submitted,

Eric T. Kanefsky, Esq., Senior Partner
Calcagni & Kanefsky LLP

cc (via ECF):  all counsel of record