SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
SOPHIA L. CAHILL (111252014)
scahill@sheppardmullin.com
30 Rockefeller Plaza
New York, NY 10112
Telephone: 212-653-8700

AMANDA L. COTTRELL (*Pro Hac Vice* To Be Filed)
acottrell@sheppardmullin.com
2200 Ross Avenue, 20th Floor
Dallas, TX 75201
Telephone: 469-391-7400

*Attorneys for Defendant Coinbase, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN H. STIER, ESQ., AS WIND DOWN TRUSTEE FOR MLS BERKOWITZ INVESTMENTS, LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DIEGO POSSEBON, *et al.,*<br><br>　　　　Defendants. | Case No. 3:24-cv-04647-ZNQ-RLS<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ALL CLAIMS AGAINST COINBASE, INC.**<br><br><u>**Motion Date**</u>**: October 7, 2024**<br><br>**Oral Argument Requested**<br><br>*Document Filed Electronically* |

# **TABLE OF CONTENTS**

**Page**

I.    SUMMARY OF THE TRUSTEE'S ALLEGATIONS AGAINST COINBASE .................................................................................1

II.   RELEVANT PROCEDURAL HISTORY ......................................................3

III.  SUMMARY OF THE ARGUMENT ..........................................................3

IV.   ARGUMENT.......................................................................................5

    A.    COUNT VI AGAINST COINBASE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM .........................5

        1.    The Complaint Fails to Specify the Alleged State Statute Underpinning the Trustee's Claim against Coinbase, Falling Short of Rule 8's Pleading Standard .............................6

        2.    The Trustee Further Fails to Plead the Fraudulent Transfer With Particularity under Rule 9(b)'s Heightened Pleadings Requirements...........................................................8

        3.    The Trustee Fails To Plead Any Specific Badges of Fraud Against Coinbase.......................................................9

        4.    The Complaint Does Not Allege There Was A Transfer Of The Debtor's Property to Coinbase ....................................11

        5.    The Trustee Has Not and Cannot Allege Transferee Status of Coinbase.....................................................13

        6.    There Are No Allegations Indicating that Coinbase Ever Had The Requisite Dominion Over the Alleged Funds...........14

        7.    The Complaint Fails to Allege Even An Incidental Benefit to Coinbase....................................................15

        8.    The Complaint Does Not Meet The Pleading Requirements for A Claim By The Trustee Under § 544 of the Bankruptcy Code .........................................15

    B.    THE TRUSTEE FAILS TO STATE A CLAIM FOR AIDING AND ABETTING AGAINST COINBASE (COUNT VII) ..............16

    C.    THE TRUSTEE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST COINBASE (COUNT VIII).................17

D.   THE TRUSTEE FAILS TO STATE A CLAIM FOR
     CONVERSION AGAINST COINBASE (COUNT IX).....................18

E.   COUNTS VI, VII, VIII, AND IX IMPERMISSIBLY GROUP
     COINBASE WITH DOZENS OF OTHER DEFENDANTS
     WITHOUT ALLEGING WHAT COINBASE HAS DONE..............19

F.   THE COMPLAINT FAILS TO ALLEGE FACTS
     SUFFICIENT TO INVOKE THIS COURT'S JURISDICTION
     OVER COINBASE ..........................................................................20

V.   CONCLUSION...........................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*
988 F.2d 1157 (Fed. Cir. 1993) ............................................................5

*American General Life Ins. Co. v. Altman Family Ins. Trust ex rel. Altman*
No. 08-300, 2009 WL 5214027 (D.N.J. Dec 22, 2009) .....................17

*American United Life Ins. Co. v. Martinez*
480 F.3d 1043 (11th Cir. 2007) .........................................................17

*Aphton Corp. v. Pasteur (In re Aphton Corp.)*
423 B.R. 76 (Bankr. D. Del. 2010)......................................................8

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)..............................................................................6

*In re Aspect Software Parent, Inc.*
578 B.R. 718 (Bankr. D. Del. 2017)....................................................5

*Bell Atl. v. Twombly*
550 U.S. 544 (2007)..............................................................................5

*Bonded Financial Services, Inc. v. European American Bank*
838 F.2d 890 (7th Cir. 1988) ......................................................14, 15

*In re Burlington Coat Factory Sec. Litig.*
114 F.3d 1410 (3d Cir. 1997) .....................................................11, 17

*Burns v. City of Bayonne*
No. 12-6075, 2013 WL 3790305 (D.N.J. July 19, 2013) ..................20

*Feldman v. Chase Home Fin. (In re Image Masters Inc.)*
421 B.R. 164 (Bankr. E.D. Pa. 2009) ..........................................10, 11

*Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130
F.3d 52 (2d Cir. 1997) ........................................................................15

*Frederico v. Home Depot*
507 F.3d 188 (3d Cir. 2007) ...............................................................16

*George Shapiro v. Suga*
   No. 16-4068, 2016 WL 3951379 (D.N.J. July 21, 2016) ...................................19

*In re Glob. Prot. USA, Inc.*
   546 B.R. 586 (Bankr. D.N.J. 2016) ....................................................................14

*Gov't Employees Ins. Co. v. Adams Chiropractic Ctr. P.C.*
   No. 19-20633, 2020 WL 881514 (D.N.J. Feb. 24, 2020)...................................18

*Gray v. Bayer Corp.*
   No., 08-4716, 2009 WL 1617930 (D.N.J. Jun. 9, 2009) ....................................17

*Guiliano v. U.S. Nursing Corporation (In re Lexington Healthcare Group, Inc.)*
   339 B.R. 570 (Bankr. D. Del. 2006) .....................................................................9

*Hechinger Invest. Co. of DE v. Fleet Retail Fin. Grp. (In re Hechinger Invest. Co. of De.)*
   327 B.R. 537 (Bankr. D. Del 2005) ....................................................................12

*In re Hooker Investments, Inc.*
   155 B.R. 332 (Bankr. S.D.N.Y. 1993)....................................................13, 14, 15

*Ingris v. Borough of Caldwell*
   No. 14-855, 2015 WL 3613499 (D.N.J. June 9, 2015) ......................................19

*Jurista v. Amerinox Processing, Inc.*
   492 B.R. 707 (D.N.J. 2013) .......................................................................7, 8, 10

*Kost v. Kozakiewicz*
   1 F.3d 176 (3d Cir. 1993) ..............................................................................5, 7

*Lee-Peckham v. Runa, LLC*
   No. 14-6635, 2015 WL 150120 (D.N.J. Jan. 12, 2015) .....................................19

*Lerner v. Fleet Bank, N.A.*
   459 F.3d 293 (2d Cir. 2006) ..............................................................................17

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)...........................................................................................20

*Mervyn's, LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*
    426 B.R. 488 (Bankr. D. Del. 2010) .................................................................12

*Mills v. Ethicon*
    406 F. Supp. 3d 363 (D.N.J. 2019) ..................................................................19

*Mo v. JPMorgan Chase Bank, N.A.*
    No. 20-14387, 2021 WL 1608895 (D.N.J. Apr. 26, 2021) ...............................19

*Montich v. Miele USA, Inc.*
    849 F. Supp. 2d 439 (D.N.J. 2012) ..................................................................18

*Morganroth v. Norris, McLaughlin & Marcus, P.C.*
    331 F.3d 406 (3d Cir. 2003) .............................................................................16

*Muhammad v. United States Bd. of Governors Postal Sys.*
    574 F. App'x 74 (3d Cir. 2014) ..........................................................................6

*In re Norvergence, Inc.*
    405 B.R. 709 (Bankr. D.N.J. 2009) ..................................................................17

*In re Oakwood Homes Corp.*
    325 B.R. 696 (Bank. D. Del. 2005) .................................................................8, 9

*Plassein Int'l. Corp. v. B.A. Cap. Co. LP (In re Plassein Int'l Corp.)*
    388 B.R. 46 (D. Del. 2008) ..............................................................................12

*Singletary v. Equity Source Home Loans, LLC*
    659 B.R. 43 (Bankr. D.N.J. 2024) .....................................................................8

*U.S. v. Tabor Court Realty*
    803 F.2d 1288 (3d Cir. 1986) ...........................................................................12

*Pearl v. Coinbase Global, Inc.*
    No. 22-cv-03561, 2024 WL 3416505 (N.D. Cal. July 15, 2024)................14, 15

*United States v. Patras*
    909 F. Supp. 2d 400 (D.N.J. 2012) ..................................................................10

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*
    919 F.2d 206 (3d Cir. 1990) .............................................................................12

Federal: Statutes, Rules, Regulations, Constitutional Provisions

11 U.S.C. § 544(b) ........................................................................................4, 15, 16

11 U.S.C. § 550 ..................................................................................................2, 13

Fed. R. Civ. P. 8(a) .....................................................................................6, 7, 9, 21

Fed. R. Civ. P. 8(a)(2) ...............................................................................................6

Fed. R. Civ. P. 8(d)(1) ...............................................................................................6

Fed. R. Civ. P. 12(b)(1) .......................................................................................5, 21

Fed. R. Civ. P. 12(b)(2) .......................................................................................5, 21

Fed. R. Civ. P. 12(b)(6) ....................................................................................4, 5, 21

Fed. R. Civ. P.  26(f) ..................................................................................................3

State: Statutes, Rules, Regulations, Constitutional Provisions

6 Del. C. § 1304 .........................................................................................................7

6 Del. C. § 1305 .........................................................................................................7

Other Authorities

5A Charles A. Wright & Arthur R. Miller, Federal Practice and
    Procedure § 1357, at 340 (2d ed. 1990) ...........................................................7

4 L. King, Collier on Bankruptcy ¶ 550.01 ......................................................15

## I.  SUMMARY OF THE TRUSTEE'S ALLEGATIONS AGAINST COINBASE

This case involves allegations that Diego Possebon ("Possebon"), together with other entities in Brazil, fraudulently induced the debtor MLS Berkowitz Investments ("MLS") and Gerald Metals into purchasing millions of dollars of gravel dust, misrepresenting it as tin concentrate. Coinbase has no involvement in these claims and should be promptly dismissed from the case.

Coinbase is barely mentioned in the 104-page Complaint at all.  Coinbase is named in Count VI (Recovery of Fraudulent Transfers) alongside more than 100 other "Recipient Defendants" who allegedly received wire transfers at some point in a three-month period from an unknown person or entity associated with the "Empire Strong" defendant group.  Specifically, the Trustee claims that "Empire Strong" wire transferred a total of $789,300 to Coinbase between March and May 2023.  Compl., ¶ 376.  The Complaint alleges that these were "funds or proceeds associated with the fraudulent scheme."  Compl., ¶ 435.

This provides Coinbase with insufficient information to identify any alleged wire transfer to a Coinbase customer, let alone to be properly notified of the fraud alleged against it in federal court. The Complaint does not identify the subject transfer by date, amount, name of the transferor, and name of the transferee, which facts are required at the pleading stage under established Third Circuit precedent.  The Complaint also does not allege Coinbase's actual fraudulent intent,

which is an essential element of the Trustee's alleged claim. These pleading defects fall well short of the requirements of Fed. R. Civ. P. ("Rule") 8 and Rule 9(b).

The pleading defects in the Trustee's fraudulent transfer action are fatal and cannot be cured. The Trustee sues Coinbase as a "Recipient Defendant," attempting to skirt his burden to specify whether Coinbase is an "initial," "immediate," or "mediate" transferee under 11 U.S.C. § 550. *See* Compl., ¶¶ 434, 438. Accordingly, the Trustee fails to satisfy its burden to plead and prove the transfer was not for value, in good faith, or without knowledge of the voidability. The Trustee also fails to establish how Coinbase exercised the requisite control or personally benefited from the funds in question. These failures cannot be cured because of how Coinbase operates. Coinbase facilitates transactions between customers. When a customer receives money into its Coinbase account, that customer can buy, sell, or exchange cryptocurrency with other customers. The Coinbase platform enables users to transact directly with one another, rather than with Coinbase itself.

As to all remaining alleged claims against the "Recipient Defendants"—that include Coinbase without any direct reference—the Trustee fails to plead essential elements of its causes of action, taking an impermissible shotgun pleading approach that is routinely rejected by this District at the motion to dismiss phase.

The Court should grant this motion in its entirety and enter an order dismissing all claims and causes of action alleged against Coinbase with prejudice.

-2-

## II.    RELEVANT PROCEDURAL HISTORY

This motion is before the Court because the Trustee has ignored Coinbase's repeated attempts to engage with him directly.  Coinbase's counsel repeatedly attempted to confer with the Trustee's attorneys by email, phone, and formal letter to address the Trustee's pleading defects.  Coinbase's good faith attempts to confer were met with silence.  To date, the Trustee has not provided sufficient transaction details that would enable Coinbase to identify any transaction on its platform that has any relationship to this dispute.

On August 27, 2024, and without first having a required Rule 26(f) conference with Coinbase, the Trustee's counsel served discovery requests on Coinbase seeking information about nearly every defendant in the Complaint and their related entities—except Coinbase. These RFPs underscore why Coinbase should not be in the case.[1]

## III.    SUMMARY OF THE ARGUMENT

The Trustee's attempt to recover funds allegedly paid by the debtor for undelivered tin concentrate from Brazil is fundamentally flawed as it pertains to Coinbase.  Coinbase is not implicated in the so-called "2022 Transaction," "2023 Transaction," or any associated contracts referenced in the Complaint.  It was not

---

[1] Coinbase intends to move the Court to stay all discovery pending resolution of this motion and seek all other appropriate relief.

involved in mining, sampling, or inspecting Brazilian tin for export, nor does it have any known business dealings or customer relationships with Possebon, his relatives, or co-defendants. Coinbase was lumped in with over 150 other "Recipient Defendants" without any factual basis linking Coinbase to the alleged wrongdoing.

Count VI (Recovery of Fraudulent Transfers) fails to allege a viable claim against Coinbase because: (1) the Complaint does not specify which state statute underpins the claim or plead those essential elements; (2) the Trustee further fails to plead the essential elements of a fraudulent transfer with requisite particularity under Rule 9(b); (3) the Complaint lacks any specific badges of fraud to substantiate a claim for intentional fraudulent transfer against Coinbase; (4) it does not allege that Coinbase received a transfer of the debtor's property or any transfer in which the debtor held an interest; (5) the Trustee has not sufficiently pled Coinbase's status as a transferee; (6) it does not allege that Coinbase could spend or invest the alleged money wired to a Coinbase customer; (7) it does not allege any actual or potential incidental benefits to Coinbase; and (8) it does not meet the requirements of § 544 of the Bankruptcy Code. 11 U.S.C. § 544; Fed. R. Civ. P. 12(b)(6), 8, 9(b).

Similarly, the Trustee's claims for "aiding and abetting" (Count VII), "unjust enrichment" (Count VIII), and "conversion" (Count IX) fail to state a claim against Coinbase. *Id.* Ultimately, the Complaint fails to specify Coinbase's alleged unlawful conduct and focuses only on the actions of parties that have no nexus to Coinbase.

The allegations against Coinbase are so deficient that the Trustee fails to even plead the necessary factual allegations to establish the Court's subject matter jurisdiction, or that the Courts in this District have personal jurisdiction over Coinbase.  Fed. R. Civ. P. 12(b)(1), (2), (6), 8, 9(b).

Even at this early pleading stage, the Court is able to determine that Coinbase should not be in this case.

## IV.    ARGUMENT

### A.    COUNT VI AGAINST COINBASE SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

A motion to dismiss under FRCP 12(b)(6) assesses whether the allegations in a complaint are sufficient to sustain a claim. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "The purpose of Rule 12(b)(6) is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity."  *In re Aspect Software Parent, Inc*., 578 B.R. 718, 722 (Bankr. D. Del. 2017) (quoting *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007).  A "claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the alleged conduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint must also abide by FRCP 8 and 9. As to the former, FRCP 8 provides "a pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). FRCP 8 further provides that each allegation "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

### 1. The Complaint Fails to Specify the Alleged State Statute Underpinning the Trustee's Claim against Coinbase, Falling Short of Rule 8's Pleading Standard

Count VI fails to specify the applicable state statute supposedly governing the avoidance claim. Without clarity on which state or foreign laws apply, it is impossible for either the Court or Coinbase to determine what laws Coinbase is allegedly violating. The federal pleading standards do not require Coinbase to guess or infer the applicable laws. *See, e.g., Muhammad v. United States Bd. of Governors Postal Sys.*, 574 F. App'x 74, 74-75 (3d Cir. 2014) (finding plaintiff's complaint failed to reveal any factual or legal basis for a federal claim; thus, dismissal was appropriate); Fed. R. Civ. P. 8(a).

While Coinbase will address Delaware law for the purposes of this motion, it does not concede that Delaware law is the sole applicable jurisdiction and reserves

all rights regarding conflicts of law issues. Under Delaware law, fraudulent transfers are governed by:

- 6 Del. C. § 1304: Transfers fraudulent as to present and future creditors, which includes provisions on actual intent to hinder, delay, or defraud creditors, and requirements for reasonable equivalent value.

- 6 Del. C. § 1305: Transfers fraudulent as to present creditors, focusing on whether the debtor received a reasonably equivalent value in exchange or became insolvent as a result of the transfer.

None of these state law elements (or any other state's laws) are addressed in the Trustee's claim against Coinbase.[2]

The Complaint's deficiencies and lack of specific allegations run afoul of the pleading standards required under FRCP 8 and should be dismissed accordingly. *Kost*, 1 F.3d at 183 ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.") (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 340 (2d ed. 1990)).

---

[2] *See also Jurista.,* 492 B.R. at 748-49 (applying New Jersey law and showing statutory pleading burden required to survive Rule 12(b) motion to dismiss under Rule 9(b) scrutiny).

## 2. The Trustee Further Fails to Plead the Fraudulent Transfer With Particularity under Rule 9(b)'s Heightened Pleadings Requirements

The Trustee's allegations in paragraphs 46 and 436 assert that Coinbase, along with over 100 other defendants, "knew, or should have known, that the funds they received were the product of an unlawful scheme."  Thus, the Trustee asserts an *intentional fraudulent transfer* claim against Coinbase—which must be pleaded with particularity under Rule 9(b) such that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Singletary v. Equity Source Home Loans, LLC*, 659 B.R. 43, 53 (Bankr. D.N.J. 2024); Fed. R. Civ. P. 9(b); *see also Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 751 (D.N.J. 2013) (dismissing fraudulent transfer and other claims based on fraud allegations for failure to meet Rule 9(b) standards) (citing *OHC Liquidating Trust v. Nucor Corp. (In re Oakwood Homes Corp.*, 325 B.R. 696, 698 (Bank. D. Del. 2005) ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under [] § 548, whether it is based upon actual or constructive fraud" [such as Counts XIII and XIV].)).[3]

---

[3] Even if the Court evaluates the Complaint as if there were a constructive fraud claim—the Trustee must still meet the requirements of Rule 9(b).  *See Aphton Corp. v. Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 85, 88 (Bankr. D. Del. 2010) (plaintiff must describe the circumstances surrounding the alleged fraudulent transfers); *Oakwood Homes*, 325 B.R. at 698 ("There is no question that Rule 9(b) applies to adversary proceedings in bankruptcy which include a claim for relief under §§ 544 or 548, whether it is based upon actual or constructive fraud.").

The Court is not required to accept legal conclusions that cannot be reasonably drawn from the facts alleged, or if such conclusions contradict matters of public record or items appearing in the record of the case. The Trustee is required to plead, at minimum, "the transfer by date, amount, name of the transferor, and name of the transferee." *Accord Guiliano v. U.S. Nursing Corporation (In re Lexington Healthcare Group, Inc.)*, 339 B.R. 570, 574-575 (Bankr. D. Del. 2006) (finding the trustee failed to meet this burden even under a *liberal* Rule 8 pleading standard when he included only a chart of alleged payments).

In *Oakwood Homes*, the court dismissed a fraudulent transfer claim where the bankruptcy trustee essentially recited only the statutory language of the Bankruptcy Code and attached a list of the amount of alleged transfers, the check date, and the check number. The facts alleged here are even weaker: the Trustee alleges only that the amount of an alleged wire transfer and provides a three-month window during which it allegedly occurred. This is not enough information for Coinbase to even investigate the alleged Coinbase customer account this wire transfer was sent to. *Oakwood Homes* resulted in a dismissal on far less and this Court should dismiss Count VI on the same rationale.

### 3.    The Trustee Fails To Plead Any Specific Badges of Fraud Against Coinbase

Proving actual intent to commit fraud can be challenging; therefore, courts may infer intent from the surrounding circumstances by identifying "badges of

fraud" present. But the critical point is that the badges must be actually pleaded against the defendant in the case.

The eleven commonly recognized badges in this District are (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. *Jurista,* 492 B.R. at 747; *United States v. Patras*, 909 F. Supp. 2d 400, 412 (D.N.J. 2012).

To survive a motion to dismiss, the Trustee must have alleged several badges of fraud *with specificity* as to Coinbase, not through conclusory statements or assertions based on information and belief. *Feldman v. Chase Home Fin. (In re Image Masters Inc.)*, 421 B.R. 164, 184-85 (Bankr. E.D. Pa. 2009).  Conclusory allegations and boilerplate statements are insufficient; plaintiffs must provide factual

allegations that make their claims plausible. *Id.; accord In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

Coinbase is not linked to the alleged fraudulent scheme as it is neither an affiliate nor an insider of the debtor or any of the other defendants. The Complaint references only Empire Strong wire transfers made between March and May 2023. Compl., ¶ 376. Even if a wire transfer were made, Coinbase had no legal duty to "know" or "should have known" of the alleged fraudulent scheme. *Accord Feldman*, 421 B.R. at 185 (granting dismissal after finding no such duty to investigate). Without specific badges of fraud or a clear nexus to the fraudulent activities described, the allegations against Coinbase cannot meet the threshold required for a claim of intentional fraudulent transfer.

### 4. The Complaint Does Not Allege There Was A Transfer Of The Debtor's Property to Coinbase

The Complaint lacks any substantive allegations regarding an alleged diminution to the debtor's estate or the property allegedly transferred to Coinbase would have been part of the debtor's estate if the transfer had not occurred. Instead, the Trustee's fraudulent transfer theory against Coinbase requires the Court to collapse the series of transactions from the debtor and Possebon, into the alleged wire transfer from Empire Strong to Coinbase between March and May 2023. (Compl., ¶¶ 376, 435).

In fraudulent transfer cases when a plaintiff seeks to collapse a series of transactions into one integrated fraudulent scheme to establish property of the debtor was directly at issue, courts assess three critical factors: (1) whether all of the parties involved had knowledge of the multiple transactions; (2) whether each transaction would have occurred on its own; (3) whether each transaction was dependent or conditioned on other transactions. *Mervyn's, LLC v. Lubert-Adler Grp. IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 497 (Bankr. D. Del. 2010) (citing *Hechinger Invest. Co. of DE v. Fleet Retail Fin. Grp. (In re Hechinger Invest. Co. of De.)*, 327 B.R. 537, 546-47 (Bankr. D. Del 2005)).

In the Third Circuit, collapsing multiple transactions into one requires also evidence of bad faith or intent to defraud.  *See, e.g.*, *Plassein Int'l. Corp. v. B.A. Cap. Co. LP (In re Plassein Int'l Corp.)*, 388 B.R. 46, 49 (D. Del. 2008) (citing *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206 (3d Cir. 1990); *U.S. v. Tabor Court Realty*, 803 F.2d 1288 (3d Cir. 1986)).

The Trustee's Complaint fails to address any of these factors in relationship to Coinbase.  It does not provide any factual basis for alleging bad faith *by Coinbase* or that *Coinbase* had constructive or actual knowledge of the earlier transactions between the debtor and Possebon.  Coinbase had no involvement or knowledge of any tin transaction in Brazil.  The Complaint lacks allegations that Coinbase was aware of any purported fraudulent scheme coordinated among the other defendants,

that the transactions were interdependent, or that they would not have occurred independently.  Absent such allegations, the Court cannot infer some overall adverse financial consequence on the debtor and its creditors from the alleged wire transfer from Empire Strong to Coinbase.

### 5.    The Trustee Has Not and Cannot Allege Transferee Status of Coinbase

Under 11 U.S.C. § 550(a), a trustee cannot recover funds from a later recipient if that recipient received the money in exchange for something of value, acted in good faith, and did not know the transfer might be legally challenged. The trustee must prove these conditions are not met before he can recover the funds.  *In re Hooker Investments, Inc.*, 155 B.R. 332, 337 (Bankr. S.D.N.Y. 1993).

The Complaint fails to address Coinbase's status as a transferee, whether initial, immediate, or mediate under 11 U.S.C. § 550(a).  It only categorizes Coinbase—and over 100 other defendants—as "recipients."  Compl., ¶¶ 376, 435.  From the detailed allegations concerning Possebon and upstream transactions with the debtor, it is essentially admitted that Coinbase is not (and cannot be) an "*initial transferee*" under § 550(a).  Therefore, the Trustee fails to sufficiently plead that the unknown Coinbase customer, as a transferee, failed to take the subject transfer for value, in good faith, and without knowledge of the voidability of the transfer.

6.    **There Are No Allegations Indicating that Coinbase Ever Had The Requisite Dominion Over the Alleged Funds**

Assuming, *in arguendo*, that Empire Strong made a wire transfer to a Coinbase sometime in 2023—that cash would directed to a Coinbase user's hosted USD wallet from which the customer could later purchase cryptocurrency from other Coinbase customers.

In cases where the initial recipient of a transfer is not the intended beneficiary but merely an intermediary, courts have adopted the "dominion and control" test. This test, articulated by Judge Easterbrook in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988), and followed by various courts, requires that the transferee have control over the transferred funds, including the ability to use them for their own purposes. *Bonded*, 838 F.2d at 893; *see also In re Glob. Prot. USA, Inc.,* 546 B.R. 586, 622 (Bankr. D.N.J. 2016) (applying *Bonded's* dominion and control test); *Hooker*, 155 B.R. at 338 (an initial transferee is one who can legally use the money for his own purposes). The key principle is that an initial transferee must have the legal title to use the assets at its discretion. That would be as if it was Coinbase's money to spend or invest as it sees fit. *Accord id.*

Coinbase does not hold title to customer assets — its customers do. *See* User Agreement, Sections 2.7.1, 2.8, available at https://www.coinbase.com/legal/user_ agreement/united_states_jan_2022; *cf. Pearl v. Coinbase Global, Inc.*, No. 22-cv-

-14-

03561, 2024 WL 3416505, at *8 (N.D. Cal. July 15, 2024) (dismissing lawsuit because, among other reasons, plaintiffs alleged only that Coinbase acts as "an intermediary in every transaction it effects.").

Courts have consistently held that it would be inequitable to impose strict liability on an intermediary who facilitates the transfer but does not have the ability to use the funds for their own benefit. *Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997) (citations omitted); *Bonded*, 838 F.2d at 893; *Hooker*, 155 B.R. at 337 (conduits facilitate the transfer of funds or property) (relying on 4 L. King, COLLIER ON BANKRUPTCY ¶ 550.01 at 550–3).

### 7.    The Complaint Fails to Allege Even An Incidental Benefit to Coinbase

The Complaint does not allege any actual or potential incidental benefit to Coinbase.  Nor can it be amended to cure these fatal defects.

### 8.    The Complaint Does Not Meet The Pleading Requirements for A Claim By The Trustee Under § 544 of the Bankruptcy Code

Insofar as the Trustee is pursuing its fraudulent transfer claim under the "strong arm" provisions of § 544 of the Bankruptcy Code, the Trustee fails to satisfy all four pleading requirements:

1.    There must be a creditor.

2.    The creditor must hold an unsecured claim allowable under § 502.

3.    There must be a transfer of an interest of the debtor in property.

4.      The transfer must be voidable under applicable state law.

11 U.S.C. § 544.

As addressed above, the Complaint does not specify any applicable state law, nor does it adequately plead the essential elements of a statutory state law fraudulent transfer claim.  The Complaint also lacks detail on the specific transaction involving Coinbase or, more critically, that the transfer was of an interest in the debtor's property.

## B.      THE TRUSTEE FAILS TO STATE A CLAIM FOR AIDING AND ABETTING AGAINST COINBASE (COUNT VII)

The Trustee's Count VII against Coinbase for "aiding and abetting" a "fraudulent scheme" fails because it does not allege facts with sufficient particularity to state a claim under Rule 9(b).  Assuming this is an alleged common law claim under New Jersey law, the elements of aiding and abetting are: "(1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing." *Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003).  In turn, "[t]o state a claim for fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*,

148 N.J. 582, 610, 691 A.2d 350, 367-368 (1997)).  Thus, "[t]o the extent the underlying primary violations are based on fraud, the allegations of aiding and abetting liability must meet the particularity requirements of Fed.R.Civ.P. 9(b)." *In re Norvergence, Inc.*, 405 B.R. 709, 746 (Bankr. D.N.J. 2009) (citation omitted); *American General Life Ins. Co. v. Altman Family Ins. Trust ex rel. Altman*, 2009 WL 5214027, *4 (D.N.J. Dec 22, 2009) (same).

The Trustee alleges a bare recitation of a "fraudulent scheme" in its allegation against all "Recipient Defendants," but "boilerplate and conclusory allegations will not suffice." *Burlington Coat*, 114 F.3d at 1418.  Nowhere does the Trustee specify what misrepresentations by Coinbase the debtor relied upon or when and how it relied upon those representations as is necessary to plead fraud. *See, e.g., Gray v. Bayer Corp.*, 2009 WL 1617930, *3 (D.N.J. Jun. 9, 2009).  Nor does the Trustee allege facts necessary to show that Coinbase had "actual knowledge" of any fraud as required for aiding and abetting liability (*Lerner v. Fleet Bank, N.A.*, 459 F.3d 293 (2d Cir. 2006)) or to explain how Coinbase's conduct furthered the commission of fraud. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007).

## C.   THE TRUSTEE FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT AGAINST COINBASE (COUNT VIII)

The Trustee's unjust enrichment claim is inadequately pleaded.  Unjust enrichment is an equitable cause of action that imposes liability when a defendant

receives a benefit and "retention of that benefit without payment would be unjust*."* *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994); *see also Gov't Employees Ins. Co. v. Adams Chiropractic Ctr. P.C.*, 2020 WL 881514, at *4 (D.N.J. Feb. 24, 2020).  Unjust enrichment claims should not survive a motion to dismiss when the pleading provides no facts showing how the defendant reaped monetary benefits or otherwise profited from plaintiff.  Also, "[a] claim for unjust enrichment in New Jersey requires privity between the parties[.]"  *Montich v. Miele USA, Inc*., 849 F. Supp. 2d 439, 460 (D.N.J. 2012).  There is no privity alleged by the debtor and Coinbase.

## D.   THE TRUSTEE FAILS TO STATE A CLAIM FOR CONVERSION AGAINST COINBASE (COUNT IX)

The Trustee also fails to properly plead a claim for conversion.  Under New Jersey law, the common law action of conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Capital Health Sys. Inc. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017).  "The theory behind conversion is that the actor has exerted such a major and serious interference with the plaintiff's rights to the chattel that in essence the law will force a judicial sale of the chattel upon the defendant." *LaPlace v. Briere*, 962 A.2d 1139, 1145 (N.J. Super. Ct. App. Div. 2009).  As stated above, the Complaint fails to provide any factual allegations about Coinbase whatsoever,

including when, where, how, and to what extent Coinbase allegedly interfered with the debtor's property or property rights.

**E.    COUNTS VI, VII, VIII, AND IX IMPERMISSIBLY GROUP COINBASE WITH DOZENS OF OTHER DEFENDANTS WITHOUT ALLEGING WHAT COINBASE HAS DONE**

The Trustee's allegations of a "fraudulent scheme" focus on Possebon and his affiliates.  The Complaint includes Coinbase as a defendant for fraud and related torts without saying what Coinbase specifically did.  The claims and causes of action against Coinbase should be dismissed on these grounds. *See, e.g., Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015); *see also Mo v. JPMorgan Chase Bank, N.A.*, No. 20-14387, 2021 WL 1608895, at *5 (D.N.J. Apr. 26, 2021) (dismissing breach of contract claim pursuant to Rule 8 for "impermissibly" alleging the claim "against all Defendants without alleging how they can all be liable"); *Mills v. Ethicon*, 406 F.Supp.3d 363, 386-87 (D.N.J. 2019) ("group pleading … has led courts in this district to dismiss past complaints); *George Shapiro v. Suga*, No. 16-4068, 2016 WL 3951379, at *2 (D.N.J. July 21, 2016) (dismissing complaint and explaining "'[plaintiff']s complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'"); *Lee-Peckham v. Runa, LLC*, No. 14-6635, 2015 WL 150120, at *3 (D.N.J. Jan. 12, 2015) (dismissing plaintiff's complaint, explaining "[p]laintiff must present sufficient facts establishing each

defendant's liability for each claim asserted"); *Burns v. City of Bayonne*, No. 12-6075, 2013 WL 3790305, at *7 (D.N.J. July 19, 2013) (dismissing complaint as "each cause of action is asserted against multiple defendants" and "does not specify which facts and which alleged actions by each defendant purportedly give rise to the specific causes of action.").

## F.    THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO INVOKE THIS COURT'S JURISDICTION OVER COINBASE

The allegations against Coinbase are so lacking that the Trustee does not even present the required facts to establish the Court's subject matter jurisdiction or demonstrate that the Courts in this District have personal jurisdiction over Coinbase. Fed. R. Civ. P. 12(b)(1), (2), (6), 8, 9(b).

To establish standing under Article III of the U.S. Constitution, a plaintiff must demonstrate: (1) an injury-in-fact that is concrete and particularized; (2) that the injury is fairly traceable to the challenged conduct of the defendant; and (3) that the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The Trustee's claims focus on fraudulent actions by Possebon and others, with no direct involvement by Coinbase or any link between Coinbase and the alleged harm. Additionally, there is no evidence that a ruling against Coinbase would address the core issues of the fraud, nor does the Complaint identify any specific Coinbase transaction or customer involved.

Additionally, the Trustee does not even attempt to establish specific personal jurisdiction, as there are no allegations linking the customer's wire transfer to New Jersey. Unless the Trustee asserts sufficient facts, he has failed to establish the Court's personal jurisdiction over Coinbase.

## V. CONCLUSION

For the reasons set forth herein, all claims and causes of action against Coinbase should be dismissed with prejudice to refiling. Coinbase requests all such other and further relief to which it may be entitled at law or in equity.

Dated:  September 6, 2024

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: _/s/ Sophia L. Cahill_____
      Sophia L. Cahill, Esq.
      NJ ID No. 111252014
      30 Rockefeller Plaza – 39th Floor
      New York, New York 10112
      Telephone: 212.653.8700
      Email:  SCahill@sheppardmullin.com

      -and-

      Amanda L. Cottrell, Esq. (*PHV T*o Be Filed)
      2200 Ross Ave. – 20th Floor
      Dallas, Texas 75201
      Telephone:  469-391-7432
      Email:  ACottrell@sheppardmullin.com