

Adam S. Kaufmann
212 822 0128
adam.kaufmann@lbkmlaw.com

September 30, 2024

**Via ECF**

The Honorable Georgette Castner
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & United States Courthouse
402 East State Street Room 2020
Trenton, New Jersey 08608-1500

    Re:  *Stier, Esq. v. Diego Possebon, et al.*, No. 24-cv-4647 (GC) (RLS)

Dear Judge Castner:

On behalf of Defendant Opus Entretenimento ("Opus") and in accordance with Your Honor's rules concerning Motions, we respectfully request a pre-motion conference in connection with Opus's anticipated motion to dismiss the Complaint under FRCP 12(b)(1), (2) and (6).

This matter involves a criminal scheme that defrauded MLS of $50 million. The cast of characters is extensive, as are the allegations, but Opus plays no part in that narrative. Compl. ¶¶ 1-480. It is, instead, part of a smaller and unrelated story—a contractual dispute involving rock concerts in Brazil—that, spanning only 7 pages, is an apparent afterthought. The cast of characters is scant, as are the allegations: the claims arise from contracts that MLS's two shareholders (not MLS) allegedly entered into from 2015-2017 with a company called Hits Entretenimento Ltda ("Hits"). *Id.* ¶¶ 481-525. Opus is alleged only to have later purchased Hits and assumed its debts and obligations (*id.* ¶ 494). These allegations—and the purported role Opus played—are neither factually correct nor legally sufficient to sustain claims against Opus.

    **I.**    **This Court Lacks Subject-Matter Jurisdiction (12(b)(1))**

Plaintiff lacks standing. The sole alleged basis for standing is that MLS's shareholders "assigned to MLS" their claims under the contracts with Hits. *Id.* ¶ 497. However, under New Jersey law, an assignment is not complete until and unless notice is provided to the obligor. *Berkowitz v. Haigood*, 606 A.2d 1157, 1159 (N.J. 1992). The Complaint does not allege notice was ever provided.

Moreover, to the extent MLS acquired the claims *after* commencing its bankruptcy proceedings on June 20, 2023, the Plaintiff, bankruptcy trustee Edwin H. Stier, still lacks standing. A claim assigned to the debtor post-bankruptcy is not "property of the estate" under 11 U.S.C. § 541(a) to which a trustee succeeds. "Property of the estate" includes an "action [that] belonged to [the debtor] *as of the time of the bankruptcy filing*" or "property acquired by *the estate itself* following the commencement of the bankruptcy case." *In re Cybergenics Corp.*, 226 F.3d 237, 246 n.15, 16 (3d Cir. 2000) (emphases added). Here, if the claims were "assigned to MLS" (Compl. ¶ 497) after

Lewis Baach Kaufmann Middlemiss PLLC

September 30, 2024
Page 2

June 20, 2023, they are not "property of the estate," and they cannot be resolved in this context.

## II. This Court Lacks Personal Jurisdiction over Opus (12(b)(2))

To weave Opus into its dispute with Hits, Plaintiff alleges, "[u]pon information and belief, [that] Hits Entertainment was purchased by [Opus]," which "assumed all the debts and obligations of Hits Entertainment." Compl. ¶ 494. This allegation is incorrect.[1] ***Opus did not acquire Hits or assume its liabilities.*** The undersigned proffers, based on information from Opus officers, that there may have been preliminary conversations about a potential acquisition of Hits, but those discussion never advanced and, in fact, no deal ever closed. Instead, in or around mid-2019, Opus entered into service agreements with legal entities that had certain shareholders in common with Hits, but did not acquire the company or assume its debts.

In any event, even if Opus did acquire Hits and inherit its jurisdictional contacts (it did not), these would not support personal jurisdiction. The transactions between Hits and MLS's shareholders concerned concerts to be performed in Brazil; the sole contact with the U.S. would be the MLS shareholders' implied (but unalleged) U.S. residence. "A nonresident's contracting with a forum resident, without more, is insufficient to establish the 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident." *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993). And likewise, with respect to Plaintiff's fraud claim, the naked assertion that the shareholders were located in the U.S. falls short of satisfying due process considerations. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265, 268 (3d Cir. 1998).

## III. The Complaint Fails to State a Claim against Opus (12(b)(6))

### a. The Complaint Fails to State a Breach of Contract Claim

The Complaint's conclusory allegation of Opus's assumption of liability cannot sustain a contract claim. Assumption of liability is an element of a claim against a non-party to a contract (*Adam Techs. LLC v. Well Shin Tech. Co., Ltd.*, 2021 WL 141371 at *7 (D.N.J. Jan. 15, 2021)), and it cannot be satisfied by merely "[i]nserting the parties' names into the elements of a claim." *Muenzon v. Peters Advisors, LLC*, 553 F.Supp.3d 187, 208 (D.N.J. 2021) (pleading that "simply parrots [assumption] in an effort to plead successor liability" in connection with a merger is insufficient). Rather, a plaintiff must "*alleg[e] facts sufficient to make out a claim that . . .* the successor expressly or impliedly assumes the predecessor's liabilities." *Pastor Enter. v. GKN Driveline N. Am., Inc.*, 2020 WL 5366286 at *3 (D.N.J. Sept. 8, 2020) (emphasis added). Here, the Complaint does not allege any facts plausibly suggesting that Opus assumed Hits' liabilities; it just alleges the assumption itself. This is not enough.

---

[1] *Cf. Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (3d Cir. 2004) (evidence may be presented, and factual questions resolved, on a 12(b)(2) motion).

September 30, 2024
Page 3

Furthermore, the contractual claims are time-barred. The statute of limitations on breach of contract claims is six years from the date of the breach. *Nat'l Util. Serv., Inc. v. Cambridge-Lee Indus., Inc.*, 199 Fed. Appx. 139, 142 (3d Cir. 2006). The Complaint alleges that the contracts, executed between 2015-2017, contemplated short-term investments in concerts to be repaid promptly. For example, as Plaintiff alleges, the investment for the Pink Floyd concert was recouped within 6 months. Compl. ¶¶ 486-489. Given the short duration of the contracts, "[t]he most generous interpretation of the [Complaint] indicates that the latest date that any of these claims might have accrued is" before April 8, 2018—over six years before the Complaint was filed. *Azog, Inc. v. Golden Integrity, Inc.*, 2024 WL 3648673 at *2 (D.N.J. Aug. 5, 2024).[2]

### b. The Complaint Fails to State a Claim for Aiding and Abetting Fraud

Aiding and abetting requires that the principal commit a wrongful act and that the defendant "knowingly and substantially assist the principal violation." *Fagan v. Fischer*, 2016 WL 347318, at *15 (D.N.J. Jan. 28, 2016). There is no substantial assistance where the only conduct attributed to the defendant "occurred after the alleged fraud." *Id.* That is the case here: the only conduct the Complaint attributes to Opus is having bought Hits *after* the alleged fraud. Additionally, the Complaint fails to allege with particularity *any* fraudulent acts or assistance by Opus but rather includes only conclusory statements insufficient to support a fraud claim.

Moreover, the underlying fraud is subject to dismissal. The Complaint's theory that Possebon never intended to pay under the contracts is barred by New Jersey's economic loss doctrine, which precludes actions concerning a defendant's future intent to perform a contract. *Petric & Associates v. CCA Civil, Inc.*, 2020 WL 3041418 at *10 (N.J. App. June 8, 2020); *Brusco v. WIP Moonachie LLC*, 2020 WL 5201379 at *7 (D.N.J. Sept. 1, 2020). Here, the underlying "fraud" was the principals' future intent *not* to perform the contracts.[3] Indeed, the only other misrepresentation alleged in the Complaint—that Hits "was becoming very profitable" and would be sold "for hundreds of millions of dollars" (Compl. ¶ 491)—is non-actionable as puffery/opinion and a forward-looking statement. *Daibo v. Kirsch*, 316 720 A.2d 994, 589 (N.J. Super. 1998) ("[v]alue is a matter of opinion"); *Altomare Auto Grp. LLC v. Volkswagen Grp. Am., Inc.*, 2023 WL 6930316 at *12 (N.J. App. Oct. 19, 2023) (projections are not actionable). While there is an exception for such statements made recklessly or in bad faith, this does not apply here, since, among other reasons, the Complaint admits that Hits' concerts had turned a profit (Compl. ¶¶ 487, 490), and that Hits was seeking an acquisition (*id.* ¶ 494).

---

[2] To the extent any of the referenced contracts (Compl. ¶¶ 486, 488, 492) contemplated a longer investment—and claims that would accrue within the six-year period of limitations—Plaintiff may submit said contracts in opposition to Opus's argument. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (documents referenced in complaint are subject to judicial notice). Opus, which did not acquire Hits, does not possess the contracts.

[3] For example, Plaintiff cites various financial troubles—gambling debt and civil judgments (Compl. ¶¶ 499-500)—as evidence of M. Possebon and Possebon's known inability to make good on the Hits investments. In any case, Plaintiff does not even allege that these financial troubles existed as of the date of execution of the contracts.

September 30, 2024
Page 4

Respectfully,

*[signature]*

Adam S. Kaufmann

NEW YORK   WASHINGTON   LONDON

lbkmlaw.com