

Eric T. Kanefsky, Senior Partner
862.772.8149   eric@ck-litigation.com

October 4, 2024

**VIA ECF**
Honorable Georgette Castner, United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

      Re:    ***Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC v. Diego Possebon, et al.***, Case No. 3:24-cv-04647-GC-RLS

Dear Judge Castner:

      Plaintiff, Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC (the "Trustee"), writes in response to the September 27, 2024 letter (ECF No. 235) (hereinafter "the QA Letter") filed by defendant Quick Auto Providers, Inc. ("Quick Auto"), requesting a conference concerning Quick Auto's anticipated motion to dismiss or refer the case to the bankruptcy judges. For the reasons explained below, Quick Auto's arguments lack merit.

**I.    RELEVANT ALLEGATIONS**

      This case stems from a massive fraud perpetrated against MLS Berkowitz, LLC ("MLS"), a company trading raw metals, and its principal creditor, Gerald Metals SARL ("Gerald"). MLS and Gerald were victimized by a sophisticated conspiracy involving over 100 individuals and entities, resulting in the loss of nearly $50 million and the bankruptcy of MLS. *See* Complaint, ¶¶ 1, 8. Empire Strong International Business Intermediation, LLC ("Empire Strong US I") and Empire Strong International Business Intermediation One, LLC ("Empire Strong US II," and, with Empire Strong US I, "Empire Strong"), both of which are Delaware entities, played a critical role in the fraud against MLS and Gerald, including by receiving structured wire payments from the United States and laundering the transfer of much of the $50 million to recipients at the direction of Diego Possebon ("Possebon"), the mastermind of the scheme, and his co-conspirators. *See id.*, ¶¶ 35-36, 38, 42, 46, 324, 337, 343-44, 347-58, 360, 364-78.

      As the Complaint alleges, Quick Auto, a Florida entity with its principal place of business in Miramar, Florida, received $48,641.36 in wire transfers from Empire Strong between March and May of 2023, for the benefit of Possebon and his co-conspirators, and in exchange for which Quick Auto provided no services or benefit to MLS or Gerald. *See id.*, ¶¶ 116, 376, 435-36. The Trustee seeks to recover the funds transferred by Empire Strong to Quick Auto pursuant to 11 U.S.C. § 550(a), which entitles the Trustee to recover avoided transfers from "the initial transferee of such transfer or the entity for whose benefit such transfer was made" or "any immediate or mediate transferee of such initial transferee."

**II.    QUICK AUTO'S ARGUMENTS FOR DISMISSAL WILL FAIL**

      Rule 8 "imposes 'minimal burdens on the plaintiff at the pleading stage,'" *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (citation omitted), but the movant's burden on a

 

Rule 12(b)(6) motion is a "heavy one," *United States v. Est. of Kelley*, 2017 WL 5714708, at *3 (D.N.J. Nov. 28, 2017). The court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

Here, the QA Letter comes nowhere close to showing that Quick Auto will be able to meet its heavy burden to prevail on a motion to dismiss. To start, while Quick Auto complains that it is one of a number of defendants named in the Trustee's fraudulent transfer count, it has not even bothered to explain to the Court why it should be entitled to dismissal of this claim. *See* (QA Letter: 2). To the extent that the Trustee guesses that Quick Auto intends to rely on the arguments made by defendant REAG USA LLC, which it "incorporates and adopts," *see* (*id.*)., it bears note that: (i) a transferee's good faith under Section 550(b) of the Bankruptcy Code is an affirmative defense, and the transferee bears the burden to show that it took for value, in good faith, and without knowledge of the voidability of the transfer, *see In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 199 (2d Cir. 2021); and (ii) a transferee's good faith and knowledge are issues of fact not suited for resolution at the motion to dismiss stage, *see id.* at 195; *In re Kossoff PLLC*, 2024 WL 1715011, at *4 (Bankr. S.D.N.Y. Apr. 19, 2024).[1]

Next, although Quick Auto believes that the aiding and abetting fraud allegations are deficient, *see* (QA Letter: 2), the Complaint details how Quick Auto, like the other Recipient Defendants, facilitated the fraud by enabling the transfer of the ill-gotten funds via Empire Strong. Quick Auto includes a sentence hinting at a Rule 9(b) challenge to the Trustee's Complaint, *see* (QA Letter: 2), but does not actually raise any specific arguments to which the Trustee can respond.

Quick Auto attacks the Trustee's unjust enrichment claim, claiming that it "does not proffer how or why Quick Auto was unjustly enriched." *See* (*id.*). However, the Complaint alleges that Quick Auto received funds from MLS as the result of a fraudulent scheme, that it provided no consideration in return, and that it would be unjust to permit Quick Auto to retain the funds under these circumstances. *See* Complaint, ¶¶ 445-48. That clearly suffices to state an unjust enrichment claim under New Jersey law. *See, e.g., VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). Similarly unpersuasive is Quick Auto's contention that the conversion claim against it fails because the Complaint does not allege a pre-suit demand to Quick Auto to return the converted funds. *See* (QA Letter: 2). Such a demand would only be required if Quick Auto lawfully came into possession of the converted property, *see Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 305 (2020), but the Complaint, ¶ 450, alleges that funds were received not lawfully but "by virtue of the fraudulent scheme."

### III.   QUICK AUTO'S ALTERNATIVE ARGUMENTS ARE UNAVAILING

Citing to a 2005 Order concerning cases "where defendants are accused of receiving unauthorized broadcast and satellite transmissions," Quick Auto seemingly asserts that it was

---

[1] To the extent that Quick Auto seeks to adopt the arguments made by BTG Pactual and Itau Unibanco S.A. concerning personal jurisdiction, *see* (QA Letter: 2), they would be inapplicable given that Quick Auto is a United States entity.

Letter to Honorable Georgette Castner, U.S.D.J., Friday, October 4, 2024
Page 3 of 4

improperly joined in this case.  *See* (QA Letter: 2 and Exhibit 1).  This argument is unavailing.

Rule 20(a)(2) allows joinder of multiple defendants in an action where the plaintiff's claims arise out of "the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."  The purpose of this Rule is to "promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).  And, "[f]or courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'"  *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

Here, the Trustee clearly satisfies the Rule 20(a)(2) requirement that the claims arise from the same transactions or series of transactions.  The claims in the Complaint arise from the fraud against MLS and Gerald and the subsequent laundering and transfer of the proceeds, including through Empire Strong, to recipients like Quick Auto.  *See, e.g., In re DBSI, Inc.*, 476 B.R. 413, 430 (Bankr. D. Del. 2012) ("several courts have held that Rule 20(a)(2)(A) is satisfied where the plaintiff has alleged a widespread scheme of wrongdoing").  Indeed, in *In re DBSI, Inc.*, the court determined that the related transaction requirement of Rule 20(a)(2) was met by the Trustee's allegations "that Debtors were engaged in a Ponzi scheme and that the Transfers were made in furtherance of the overall fraudulent scheme."  *Id.*

With respect to the common question of law or fact requirement, there are common questions of fact for all defendants given that the Trustee's claims all arise from the fraud against MLS and Gerald.  *See id.* (where transfers were alleged to be fraudulent due to Ponzi scheme, the facts relevant to that scheme were common to all defendants).  Moreover, Quick Auto's submission piggybacking on pre-motion letters from other defendants indicates the existence of common questions of law.

Finally, any effort by Quick Auto to refer this matter to the bankruptcy judges based on Standing Order 12-1, *see* (QA Letter: 3 and Exhibit 2), would be a futile exercise.  The Standing Order quoted by Quick Auto makes clear that in the event of such a referral to the bankruptcy judges, the Court would have to withdraw the proceeding if it were to determine that resolution of the action "requires consideration of both Title 11 and other laws of the United States regulating the organization of activities affecting interstate commerce."  *See id.*  That is clearly the case here given that the Complaint includes RICO claims pursuant to 18 U.S.C. § 1962.

*          *          *

We thank the Court for its attention to this matter.

Letter to Honorable Georgette Castner, U.S.D.J., Friday, October 4, 2024
Page 4 of 4

          Respectfully submitted,

          Eric T. Kanefsky, Esq., Senior Partner
          Calcagni & Kanefsky LLP

cc (via ECF):  all counsel of record