

Eric T. Kanefsky, Senior Partner
862.772.8149    eric@ck-litigation.com

October 9, 2024

**VIA ECF**
Honorable Georgette Castner, United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

      Re:    ***Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC v. Diego Possebon, et al.***, Case No. 3:24-cv-04647-GC-RLS

Dear Judge Castner:

Plaintiff, Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC (the "Trustee"), writes in response to the September 30, 2024 letter (ECF No. 239) (hereinafter the "Opus Letter") filed by defendant Opus Entretenimento ("Opus") requesting a conference concerning Opus's anticipated motion to dismiss.

**I.    RELEVANT BACKGROUND.**

Seth and Mark Berkowitz are members of MLS Berkowitz, LLC ("MLS"), a New Jersey entity that was the victim of a massive fraud that resulted in its bankruptcy. Complaint, ¶¶ 1, 14-15. Pursuant to his appointment by the Bankruptcy Court, the Trustee has the power to assert causes of action belonging to MLS, the debtor. *See, e.g., Off. Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 356 (3d Cir. 2001).

Between August 2015 and April 2017, Seth and Mark Berkowitz, individually and through MLS, invested more than $2 million with Hits Entretenimento Ltda. ("Hits"), pursuant to a series of promissory notes and loan agreements. Matheus Possebon ("M. Possebon") and Lucas Giacomolli ("Giacomolli") were partners in Hits. *See* Complaint, ¶¶ 482-84, 492-93. To induce the investments, M. Possebon told Mark and Seth Berkowitz that Hits was "becoming very profitable," and that he was going to sell it "for hundreds of millions of dollars." *Id.*, ¶¶ 491, 517. Mark and Seth assigned to MLS their rights, title, and interest to the investments and loans made individually. *Id.*, ¶ 497. Hits was purchased by Opus, which assumed Hits' debts and obligations. *Id.*, ¶¶ 494, 504, 505, 510. None of the principal and interest owed pursuant to the loans/investments was ever repaid by Hits. M. Possebon told Seth Berkowitz that this was because he had incurred massive gambling losses. *Id.*, ¶ 494, 510. M. Possebon and Giacomolli are believed to be former and current Opus executives, respectively. *Id.*, ¶¶ 495-96.

**II.    OPUS'S JURISDICTIONAL ARGUMENTS LACK MERIT.**

There is no merit to Opus's contention that subject matter jurisdiction is lacking because the Trustee's Complaint "does not allege notice was ever provided" to Hits that MLS's owners assigned to MLS "their claims under the contract with Hits," and, therefore, the assignment was not complete under New Jersey law. *See* (Opus Letter: 1). Even if Hits could establish that it did not receive notice that the notes entered into individually by Mark and Seth were assigned to MLS,

Letter to Honorable Georgette Castner, U.S.D.J., Wednesday, October 9, 2024
Page 2 of 4

"courts in New Jersey have held that a lack of notice will not invalidate an assignment." *In re Fiorella*, No. CIV.A. 14-3255 JBS, 2014 WL 6687317, at *4 (D.N.J. Nov. 26, 2014); *see also New Century Fin. Servs., Inc. v. Oughla*, 437 N.J. Super. 299, 316 (App. Div. 2014) ("the lack of notice to the debtor does not affect the validity of the assignment"). Moreover, Mark and Seth Berkowitz assigned their interests in the promissory notes to MLS long before the bankruptcy of MLS and, thus, Opus's arguments about post-bankruptcy assignments, *see* (Opus Letter: 1-2), are irrelevant.

Opus's personal jurisdiction arguments are also unavailing. Opus contends that it is not subject to the Court's jurisdiction because, while Opus explored acquiring Hits, Opus's officers have represented to counsel that the deal never "closed." *See* (*id.*: 2). At best, that assertion—which is difficult to reconcile with the reports in the Brazilian press announcing a "merger" between Opus and Hits and featuring quotes from the principals of Opus and Hits celebrating the merger and touting its benefits—raises a factual dispute that requires further exploration and cannot be resolved on a motion to dismiss.[1]

Opus's argument that personal jurisdiction is lacking because Hits' contacts with the forum were limited to "contracting with a forum resident" is equally unpersuasive. *See* (*id*). Courts assessing a challenge to specific jurisdiction determine (1) whether the defendant purposefully directed its activities at the forum, (2) whether the litigation "arise[s] out of or relate[s] to" at least one of those activities, and (3) whether the exercise of personal jurisdiction comports with fair play and substantial justice. *See Caduceus, Inc. v. Univ. Physician Grp.*, 713 F. Supp. 3d 30, 35 (D.N.J. 2024) (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). Application of this test weighs heavily in favor of the Court exercising jurisdiction.

*First*, forming and executing a contractual relationship "centered" in the forum is an act by a defendant avails itself of conducting activities in the forum. *Id.* at 35-37. A court considering whether the relationship is "centered" in the forum takes into account factors, including: where the contract was signed, the "back-and-forth" between the forum and the defendant, the time spent by the defendant interacting with the forum plaintiff, and whether performance of the contract involved "meaningful connections" to the forum. *Id.* at 38. Here, the contracts were executed by Mark and Seth Berkowitz in New Jersey, M. Possebon negotiated the agreements via phone and internet communications with Seth and Mark Berkowitz in New Jersey, the agreements called for the application of the law of a U.S. jurisdiction (New York), and performance under the agreements required Hits to remit repayments to a New Jersey bank account.

*Second*, for the same reasons, the Trustee's claims against Opus "arise" out of Hits' contacts with the forum. *See, e.g., Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020) (litigation arises out of the defendant's contacts with the forum when the defendant's contacts with the forum state were instrumental in contract's formation or breach).

*Third*, given Hits' extensive contacts with New Jersey, Opus cannot establish that it should not have reasonably anticipated being haled into court in New Jersey *See Carteret Sav. Bank, FA*

---

[1] *See, e.g., Opus Promotions and Hits Entertainment announce merger*, Correio de Povo (June 17, 2019), available at https://www.correiodopovo.com.br/arteagenda/opus-promo%C3%A7%C3%B5es-e-hits-entretenimento-anunciam-fus%C3%A3o-1.346001. Per the Google translation of the article, Opus and Hits announced "the merger of the two production companies to form a single company."

*v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (Once the first two prongs are satisfied, it is incumbent on the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.") (internal citation and quotations omitted); *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (jurisdiction comports with fair play and substantial justice when the defendant should reasonably anticipate being haled into court in the forum). And if there is any doubt concerning the sufficiency of Hits' contacts with this forum, jurisdictional discovery should be permitted. *See Caduceus, Inc.*, 713 F. Supp. 3d at 35 (noting "presumption" of jurisdictional discovery for corporate defendants).

### III.     OPUS'S 12(B)(6) CHALLENGES ARE BASELESS.

According to Opus, the Trustee's Complaint fails to state a claim because it does not allege facts suggesting that Opus assumed Hits' liabilities. *See* (Opus Letter: 2). However, in contrast to the authority relied upon by Opus, *see* (*id.*), the Complaint alleges facts making it plausible that Opus assumed Hits' liabilities including that Opus acquired Hits and that M. Possebon and Giacamolli played roles in both entities.

The statute of limitations is an affirmative defense that "'will support dismissal under Rule 12(b)(6) only in the very clear case where a plaintiff has pled itself out of court.'" *D'Andrea v. Gelok*, No. CV2200491GCTJB, 2023 WL 6307529, at *3 (D.N.J. Sept. 28, 2023) (internal citation omitted). This is not one of those "very clear" cases because Opus merely asserts without explanation that the claims must be time barred because the contracts were entered into between 2015 and 2017 and were purportedly of "short duration." *See* (Opus Letter: 3). Moreover, the relevant inquiry here is whether the claims were filed within two years of the June 20, 2023 order for relief in MLS's bankruptcy, *see* 11 U.S.C. § 108(a), not the commencement of this case.

There is no basis to dismiss the aiding and abetting claim because the Complaint plausibly alleges that Opus and MP Capital were used as tools of the fraud, as repositories of the illicit funds, and to provide superficial layers of protection for M. Possebon and Giacomolli. While Opus contends that the aiding and abetting claim must be dismissed under the economic loss doctrine, *see* (*id.*), the alleged misrepresentations were made to induce the investments in Hits, *see* Complaint, ¶¶ 515-20, and "[t]he economic loss doctrine 'does not bar claims for fraud in the inducement of a contract,'" *Peters v. Countrywide Home Loans, Inc.*, No. CV156329FLWLHG, 2016 WL 2869059, at *4 (D.N.J. May 17, 2016) (internal citation omitted). Opus incorrectly argues that M. Possebon's statements that Hits was "becoming very profitable" and "would be sold for hundreds of millions of dollars" are not actionable as "puffery" or "opinion." *See* (Opus Letter: 3). The representation that Hits was becoming profitable was a statement of fact that would certainly be material for someone investing money with the company. *See, e.g., United States v. Kaplan*, 758 F. App'x 34, 38 (2d Cir. 2018) ("Doumas and Raia also told customers that they themselves had profitable vending routes, but they did not. These are specific, falsifiable statements that a reasonable jury could certainly deem material.").

*          *          *

We thank the Court for its attention to this matter.

Respectfully submitted,

Eric T. Kanefsky, Esq., Senior Partner
Calcagni & Kanefsky LLP

cc (via ECF):  all counsel of record