

Offit | Kurman®

Attorneys At Law

Trust. Knowledge. Confidence.

**Cathy Fleming**
**201-518-7907**
**Cathy.Fleming@offitkurman.com**

November 11, 2024

The Hon. Georgette Castner, U.S. District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

    Re:  *Edwin Stier, Esq., as Wind Down Trustee v. Possebon et al.*
        (DNJ No. 3:24-cv-04647-GC-RLS)

Dear Judge Castner:

  We represent defendant, Adukargo Transportes e Logistica e Servicos de Armazenagens Ltda., ("Adukargo"), in the above-captioned matter. We write to join the seven pending requests that the Court hold a pre-motion conference to discuss Adukargo's intention to file a Rule 12(b) motion to dismiss. As explained below, we contend that the Court should dismiss the Complaint because it lacks jurisdiction over Adukargo and the Complaint fails to state a claim against Adukargo.

  **1. Background**
  This case arises out of a contract dispute between MLS Berkowitz, LLC ("MLS"), and Gerald Metals, ("Gerald'), a Swiss corporation. Dkt. 1 ¶¶ 1, 3, 10, 17, 250, 282. In January 2023, MLS and Gerald met with defendant, Diego Possebon, *in Brazil*, and *based on Possebon's representations* at that meeting and *MLS's prior dealings with Possebon*, MLS and Gerald executed a January 31, 2023 contract, which required MLS to deliver tin concentrate to Gerald in Thailand. *Id.* at ¶¶ 237-249. Adukargo was not present at this meeting. *Id.* Adukargo was not a party to the contract*, and* it did not receive any payments from MLS or Gerald. *Id.* at ¶¶ 320, 329, 347, 349 – 378. Rather, Adukargo, which is a Brazilian company, was hired by a Brazilian company, TW Brasil, to collect gravel dust from a company in Brazil and deliver it to a Brazilian port. *Id.* at ¶¶ 6, 27-28, 241, 300. In May 2023, Gerald opened containers in Thailand and discovered that they contained "Po De Brita," or gravel dust. *Id.* at ¶¶ 282-83.

  Plaintiff's allegations demonstrate that Adukargo played no role in Possebon's alleged fraud. Plaintiff states that Defendants, Dakar, and TW Brasil, were the exporters of record and that Dakar, TW Brasil, and Possebon sent all of the documents to MLS. *Id.* at ¶¶ 27, 248, 262-271, 293, 296-97. Although Plaintiff claims that an Adukargo employee, Francisco Bonates, attended an April 2023 meeting between Possebon and Gerald, this meeting occurred months after the contract was executed and after Gerald paid MLS. Further, Plaintiff does not identify any misrepresentation made by Bonates. Plaintiff admits that Gerald *relied on Possebon* to translate. *Id.* at 274-281.

  **A. The Complaint Fails to Allege Personal Jurisdiction Over Adukargo**
  This Court cannot exercise general jurisdiction over Adukargo because it is incorporated

and headquartered in Brazil. *Id.* at ¶ 28. Thus, Adukargo is not at home in the forum. *See e.g., Daimler AG v. Brauman,* 571 U.S. 117, 137(2014). This Court also lacks specific jurisdiction over Adukargo. To establish specific jurisdiction, Plaintiff must allege that Adukargo purposefully "avail[ed] itself of the privilege of conducting activities within the forum state," by deliberate activity, such as "entering into a contractual relationship" in the forum and that the dispute arises out of that contact. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,* 592 U.S. 351, 359 (2021). Plaintiff cannot rely on the fact that MLS allegedly suffered an injury in the forum to establish jurisdiction because "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore,* 571 U.S. 277, 285 (2014). If the Plaintiff makes this showing, the Court may exercise jurisdiction only if doing so is consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, (1945).

Plaintiff, which has spent more than $ 2 million "investigating" this dispute,[1] has not identified a single contact between Adukargo and the forum. Indeed, the allegations concerning Adukargo involve events that happened in Brazil.[2] This precludes exercising jurisdiction over Adukargo. Moreover, exercising jurisdiction over Adukargo would offend traditional notions of fair play and substantial justice. It would be tremendously burdensome for Adukargo to litigate in the United States. All proceedings will be conducted in a distant forum, in a foreign language, under foreign laws. This would involve substantial costs, which will be exacerbated by the exchange rate between the dollar and the real. Finally, the forum has no interest in providing relief to the real party in interest, Gerald,[3] because it is a Swiss company.

### B. The Complaint Fails to State a Claim Against Adukargo

To survive a motion to dismiss, the complaint must assert "sufficient factual matter," to state "a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citations omitted). Further, Counts I-V sound in fraud and, therefore, Plaintiff must assert the claims with particularity. Fed. R. Civ. P. 9(b). Thus, Plaintiff must allege "the date, time, and place of the fraud," the "nature and subject of" the alleged misrepresentation and identify the person who made the misrepresentation. *Northeast Rev. Serv., LLC v. Maps Indeed, LLC,* 685 Fed. Appx. 96, 102 (3d Cir. 2017). Plaintiff has not met this burden.

Counts I and II, which attempt to allege fraud and aiding and abetting fraud claims, fail as a matter of law. To state a fraud claim, Plaintiff must allege that (1) Adukargo misrepresented a material fact; (2) Adukargo knew that its representation was false; (3) Adukargo intended Plaintiff to rely on its statement; (4) it reasonably relied on the false statement; and (5) suffered damages as a result. *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007). Count I fails because Plaintiff has not identified any misrepresentation by Adukargo or that it relied on any misstatement by Adukargo, which "are the hallmarks of any fraud claim." *Banco Popular N. Am. V. Gandi,* 876 A.2d 253, 261 (N.J. 2005). To state an aiding and abetting fraud claim, Plaintiff must allege that someone committed a fraud that caused an injury; and (3) Adukargo "knowingly

---

[1] *See In re MLS Berkowitz,* (Bank. N.J. No. 23-15334) at Dkt. 87 at p. 2.

[2] Plaintiff's claim that he may rely on Adukargo's contacts with the United States, as a whole, does not cure the Complaint's jurisdictional defects because Plaintiff has not alleged any contact between Adukargo and the United States.

[3] *See In re MLS Berkowitz,* (Bank. N.J. No. 23-15334) at Dkt. 28 at ¶¶ 2.14, 4.3, 4.4

and substantially assisted the primary" fraud. *N.J. Dep't. of Treas. ex rel. McCormac v. Qwest Comm'n. Int'l., Inc.,* 904 A.2d 775, 784 (N.J. App. Divi. 2006). Count II fails because the Complaint does not allege a single fact that suggests that Adukargo was aware of Possebon's alleged fraud or that it substantially assisted Possebon in his fraud.

Counts III and IV, which attempt to allege federal RICO claims, and Count V, which attempts to state a New Jersey RICO claim, are also fatally deficient. As a threshold matter, the real party in interest is Gerald, which is a Swiss company, and, thus, may not assert a federal RICO claim. *RJR Nabisco, Inc. v. European Comm.,* 579 U.S. 325, 355 (2016). Further, the Complaint does not plead the elements of a federal RICO or a New Jersey RICO claim.

Count III, which attempts to allege a RICO claim based on theory that Adukargo operated an enterprise through a "pattern of racketeering activity," in violation of 18 U.S.C. § 1962(c), fails for several reasons. First, Count III fails because it concerns a single contract that was performed over a five-month period. However, the RICO statute is applicable to "long-term criminal conduct," not "acts lasting over a few weeks or months." *HJ Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 242(1989). The Complaint concerns events that transpired over a five month period, which is insufficient, as a matter of law, to allege the required continuity. *Tabas v. Tabas,* 47 F.3d 1280, 1293 (3d Cir. 1995). Second, Count III does not identify a single act of racketeering by Adukargo, which simply transported and stored a product in Brazil. This is fatal to Count III because the RICO statute requires an allegation that Adukargo engaged in at least two predicate acts of racketeering. 18 U.S.C. §§ 1961(5); 1962(c); *HJ Inc.,* 492 U.S. at 237. Third, Count III fails because the Complaint does not allege that Adukargo play a "part in directing the enterprise's affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993). Similarly, Count IV fails because a plaintiff may not bring a RICO conspiracy claim "for injuries caused by an overt act *that is not an act of racketeering* or otherwise unlawful under the statute." *Beck v. Prupis,* 529 U.S. 494, 507 (2000) (emphasis added). Finally, Count V fails to state a New Jersey RICO Act claim, which is interpreted in accordance with the federal RICO statute. *In re Schering-Plough Corp.,* 678 F.3d 235, 245 (3d Cir. 2012); *State v. Cagno,* 49 A.3d 388, 400 (N.J. 2012). Count V fails because it does not identify two predicate acts of racketeering by Adukargo or that Adukargo managed an enterprise through a pattern of racketeering activity. *State v. Ball,* 661 A.2d 251, 265 (N.J. 1995).

In sum, Plaintiff, has failed to plead a *prima facie* case of jurisdiction over Adukargo and has failed to state a plausible claim against Adukargo. Adukargo respectfully requests that the Court schedule a pre-motion conference to discuss the fatal flaws in the Complaint.

Respectfully submitted,

**OFFIT KURMAN, P.A.**

By:___*/s/ Cathy Fleming*___
Cathy Fleming

cc:  Janene Marasciullo (*pro hac vice pending*)

4877-2218-6743, v. 2

3