

53 STATE STREET | BOSTON, MA 02109 | P:617-330-7000
69 PARK STREET, FLOOR 2 | ANDOVER, MA 01810 | P:978-474-4700
500 UNICORN PARK DRIVE, SUITE 502 | WOBURN, MA 01801 | P:781-933-5505

Theodore J. Folkman
Direct Dial: (617) 330-7135
E-mail: tfolkman@rubinrudman.com
Return Address: Boston

January 17, 2025

Hon. Robert Kirsch
U.S. District Court for the District of New Jersey
402 E. State St.
Trenton, NJ 08608

    Re:    *Stier v. Possebon,* et al., No. 24-cv-04647-GC-RLS

Dear Judge Kirsch:

I represent Treviso Corretora de Cambio, S.A., a defendant in this action. My client plans to bring a motion to dismiss for lack of personal jurisdiction, for failure to plead fraud with particularity, and for failure to state a claim. I write to request a pre-motion conference, as required by your individual rules and procedures.

The complaint's main allegation is that a Brazilian businessman, Diego Possebon, sold MLS Berkowitz LLC more than a hundred containers that were supposed to contain tin concentrate but in fact contained "worthless gravel dust." MLS Berkowitz paid "nearly $50 million" for the worthless gravel and sought bankruptcy protection. Possebon's acts were not just a breach of a sales contract but a fraud, MLS claims, because Possebon "and his co-conspirators" had sold a much smaller batch of tin concentrate to MLS Berkowitz the year before and thus induced MLS Berkowitz to regard him as a legitimate source of tin, and because Possebon "and his co-conspirators" induced MLS to pay for the goods by issuing false commercial documents attesting to the quality of the goods.

Treviso is mentioned only a few times in the lengthy complaint and is named in only one of the complaint's seventeen counts: count 2, for aiding and abetting fraud. The complaint alleges that Treviso is a business entity with its principal place of business in São Paulo. (¶ 101). It alleges that Treviso, along with twenty-four other defendants, "engaged in acts or omissions that aided, abetted, or otherwise furthered the fraudulent scheme." (¶ 390). And it alleges that Treviso, along with six other defendants, "substantially aided the scheme by holding, concealing, and facilitating the transfer of the illicit proceeds." (¶ 391k). That is all the complaint has to say about Treviso. The complaint does also allege generally that all of the two dozen defendants accused, with Treviso, of aiding and abetting the alleged fraud, "had knowledge of the fraud by virtue of, among other things, their long-standing business and personal relationships with Possebon, their direct participation in the fraud, and glaringly obvious indicia of illicit conduct, including, but not limited to, the creation of false documents, affirmative acts of concealment,

Page 2

inexplicable departures from industry norms and standards, and the criminal and/or troubled histories of their co-conspirators." (¶ 392).

*Personal jurisdiction.* Treviso is a Brazilian currency exchange firm. It has no presence or offices in the United States. No one can doubt that Treviso is not subject to the Court's general personal jurisdiction. *See Fischer v. Fed. Express Corp.,* 42 F.4th 366, 383 (3d Cir. 2022) ("For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business"). Nor can Stier show specific jurisdiction. Treviso will prove through the declaration of Mauro André Neto, one of its executives, that it had no dealings relevant to this action with any person in the United States and did not reach out to the United States or purposefully avail itself of the privilege of doing business here. Treviso's only role was to provide currency exchange services for Dakar and TW, two Brazilian defendants alleged to be the exporters for the allegedly fraudulent transaction, and the recipients of payments from Berkowitz. Dakar and TW did not have a direct relationship with Treviso. Instead, they were clients or customers of HRL Serviços, another Brazilian currency exchange firm, not under common ownership or control with Treviso. HRL is a correspondent institution of Treviso, and their relationship is regulated under Resolution 4935/2021 of the Brazilian Central Bank. HRL would have instructed Dakar and TW, in Brazil, to instruct Berkowitz, in the US, to identify the beneficiary for the wired funds as "Dakar CCME Treviso" or "TW CCME Treviso," or words to similar effect; "CCME" stands for "exchange currency bank account" in Portuguese. Dakar and TW would also have instructed Berkowitz to identify Banco Rendimento ("Rendimento"), a Brazilian bank, as the bank to receive the wired funds. Rendimento is Treviso's correspondent bank. After Rendimento received the funds in dollars, Treviso advised Dakar and TW that the funds had been received and were available to be converted into reals when they wished. Dakar and TW then instructed Treviso to convert the funds at various times.

As the Court can see, Treviso had no dealings and no communications with anyone in the United States, including Berkowitz, in connection with the transactions at issue. Treviso did nothing to reach in to New Jersey or the United States to target Berkowitz or anyone else. Rather, Berkowitz, on instructions from Dakar or TW, reached out to Brazil to transfer the funds, and Treviso happened to be the correspondent of the currency exchange firm Dakar and TW had chosen. Thus there is no way Berkowitz could show purposeful availment, as it must do to establish personal jurisdiction. *See D'Jamoos v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 103-04 (3d Cir. 2009) ("the critical finding that the defendant purposefully availed itself of the privilege of conducting activities within the forum requires contacts that amount to a deliberate reaching into the forum state to target its citizens"). Nor, on the facts, could Berkowitz establish the other key jurisdictional fact, as there was no contact, let alone minimum contacts, between Treviso and the US. Treviso received a wire transfer, but "receiving a wire transfer, even if the wire transfer came from [the forum], is not sufficient to establish minimum contacts without more." *United My Funds, LLC v. Perera,* 2020 U.S. Dist. LEXIS 23060, at *11 (E.D. Tex. Feb. 11, 2020). I note that while some courts have given special treatment to claims asserting that foreign co-conspirators are subject to personal jurisdiction by attributing acts of co-conspirators to each other, the Third Circuit has predicted that New Jersey would reject such special treatment, *see Lasala v. Marfin Popular Bank Pub. Co.,* 410 Fed. App'x 474, 478 (3d Cir. 2011) (non-precedential), and this Court has held that a co-conspirator cannot be subject to jurisdiction

Page 3

unless it had contact with New Jersey. *See Estate of Stevens v. N. Am. Co. for Life,* 2024 U.S. Dist. LEXIS 176926, at *24-25 (D.N.J. Sept. 30, 2024). *See also Waste Mgmt., Inc. v. Admiral Ins. Co.,* 649 A.2d 379, 389 (N.J. 1994) ("jurisdiction over one defendant may not be based on the activities of another defendant, nor on the plaintiff's connection to the forum state").

*Failure to state a claim.* To state a claim, a complaint must allege "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). The Court must accept well-pleaded allegations as true but must not credit "legal conclusion couched as a factual allegation." *Id.* at 677-78. Under New Jersey law, the elements of aiding and abetting a fraud are "(1) the commission of a wrongful act [the underlying fraud]; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, PC,* 331 F.3d 406, 415 (3d Cir. 2003). Treviso concedes that the complaint adequately alleges the underlying fraud by Possebon and others. But the allegations that Treviso knew of it or substantially participated in it are purely conclusory—they are just the kind of allegations that, under *Iqbal,* the Court should disregard. Nor does anything in the complaint give the Court any basis to infer that Treviso knew of the scheme. The complaint does not allege anything about the role Treviso played in the transaction and thus cannot explain how it is plausible that a financial institution performing a currency exchange would or should have known of the scheme. The Court has dismissed aiding and abetting fraud claims in other cases with similarly vague allegations. *See, e.g., August Uribe Fine Art, LLC v. SRL,* 2023 U.S. Dist. LEXIS 51422 (D.N.J. Mar. 27, 2023). In addition, the complaint is a textbook example of "group pleading," which "courts in this district consistently hold … [do] not satisfy the plausibility requirements of Rule 8." *McLeod v. Fifth Jud. Dist. Of Pa.,* 2022 U.S. Dist. LEXIS 193448, at *4-5 (D.N.J. Oct. 21, 2022). The complaint "indiscriminately attribute[s] wrongdoing to a group of defendants, leaving them to guess as to who allegedly did what." *Jing Kong v. Johnson & Johnson,* 2024 U.S. Dist. LEXIS 69265, at *11 (D.N.J. Apr. 15, 2024).

*Failure to plead fraud with particularity.* The requirement to plead fraud with particularity, Fed. R. Civ. P. 9(b), applies to claims of aiding and abetting fraud. *See Zemel Korchmar,* 2020 U.S. Dist. LEXIS 203538, at *5 (D.N.J. Oct. 30, 2020). *See also ABF Capital Mgmt. v. Askin Capital Mgmt.,* 957 F. Supp. 1308, 1328 (S.D.N.Y. 1997). To meet the rule, the complaint must plead or allege the "date, place or time" of the fraud or in any event enough facts to give the allegation of fraud "precision and some measure of substantiation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (citation omitted). The allegations recited above are insufficient to meet this standard and are even more general than the allegations in *Lum,* which the Third Circuit found insufficient.

Respectfully submitted,

Theodore J. Folkman

cc:    All Counsel of Record (via ECF)

4181533_1