# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWIN H. STIER, ESQ., AS WIND DOWN TRUSTEE FOR MLS BERKOWITZ INVESTMENTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DIEGO POSSEBON, *et al.*, <br><br> Defendants. | Civil Action No. 24-4647 (RK) (RLS) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

**SINGH, United States Magistrate Judge**.

    **PRESENTLY** before the Court is a Motion brought pursuant to Rule 4(f)(3) of the Federal Rules of Civil Procedure (the "Motion") by Plaintiff Edwin H. Stier, Esq. ("Plaintiff"), in his capacity as Wind Down Trustee for MLS Berkowitz Investments, LLC ("MLS"), to effectuate service by alternative means upon Defendant Larissa Carvalho Possebon ("L. Possebon"), a resident of Brazil. (Doc. No. 88). L. Possebon opposes the Motion, (Doc. No. 162), to which Plaintiff has replied, (Doc. No. 176). L. Possebon has moved for leave to file a sur-reply on the Motion (the "Motion to File a Sur-Reply"), (Doc. No. 264), which Plaintiff opposes, (Doc. No. 292). The Court has fully considered the Motion and Motion to File a Sur-Reply without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, and good cause shown, the Court **GRANTS** the Motion to File a Sur-Reply and **DENIES** without prejudice Plaintiff's Motion.

1

I.  **RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

Through this action, Plaintiff, as MLS's wind down trustee, seeks to recoup approximately $50 million allegedly lost through a fraudulent scheme engaged in by L. Possebon and several other named defendants. (*See generally* Doc. No. 7).[1] According to the Complaint, MLS was in the business of trading, sourcing, purchasing, and reselling raw metals, and Gerald Metals SARL ("Gerald") was its customer and principal creditor. (Doc. No. 7 at pp. 8, 12). Plaintiff alleges that, through a series of transactions, L. Possebon's husband, Defendant Diego Possebon, sold to MLS (which in turn sold to Gerald) what was purported to be Brazilian tin concentrate but was actually gravel dust of no value. (*See* Doc. No. 7 at ¶¶ 1–5). Plaintiff asserts the scheme drove MLS to bankruptcy. (Doc. No. 7 at ¶ 8).[2]

Specific to L. Possebon, Plaintiff alleges that some of the proceeds derived from the fraudulent scheme were used to secure the purchase of a condominium for her in Miami, Florida from Defendant Miami Waterfront Ventures, LLC ("MWV"). (*See* Doc. No. 7 at pp. 10, 65–67; Doc. No. 88-1 at p. 7). Defendant Monique P. Levy ("Levy"), who is Diego Possebon's sister and thus L. Possebon's sister-in-law, lives in Florida and acted as the purchasing agent and broker. (*See* Doc. No. 7 at pp. 22, 66; Doc. No. 88-1 at p. 7). As part of that transaction, the title company and escrow agent, Defendant Fidelity National Title Insurance Co. ("Fidelity") is currently holding $3,662,500 of the transaction's proceeds, and MWV is currently holding $912,500 of such proceeds (collectively, the "Condominium Proceeds"). (Doc. No. 88-4 (Declaration of Daniel Stolz, Esq.) at ¶ 9). Fidelity is prepared to interplead the funds it is holding pending service upon

---

[1] Plaintiff filed an incomplete version of the Complaint on April 8, 2024, (Doc. No. 1), and a corrected version on April 11, 2024, (Doc. No. 7). The Court cites herein to the corrected version.

[2] *See in re MLS Berkowitz, LLC*, Case No. 23-15334 (Bankr. D.N.J.).

L. Possebon and Plaintiff will then move for summary judgment to recover the Condominium Proceeds. (*See* Doc. Nos. 88-4 at ¶¶ 10–11; *see also* Doc. Nos. 104, 168).

Emphasizing the need to move promptly to seek to recover the Condominium Proceeds, Plaintiff now moves for leave to serve L. Possebon through alternative means, namely via: (1) email to L. Possebon's personal email address purportedly also used to correspond with MWV; (2) email and overnight delivery to a Florida-based attorney, Jorge D. Guttman ("Guttman"), of Gunster, Yoakley & Stewart, P.A., who represented L. Possebon relating to some of the funds used to purchase the Miami condominium as incident to his representation of her in a civil matter pending in Miami state court,[3] (*see* Doc. No. 88-4 at ¶ 13; *see also* Doc. No. 162-1 (Declaration of Guttman)); and (3) overnight delivery to Levy. (*See* Doc. No. 88-1 at pp. 5–9, 13). Plaintiff, nevertheless, has initiated the process of service on L. Possebon at her residence in Brazil through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. (*See* Doc. No. 88-3 (Declaration of Rabih Nasser)). Plaintiff asserts, however, that the Hague Convention process could take six months or more to effectuate service on L. Possebon, which would unnecessarily delay the proceedings in this case. (Doc. No. 88-3 at ¶¶ 8–9; Doc. No. 88-1 at pp. 5, 8).

Through counsel appearing for the limited basis to oppose the Motion, L. Possebon opposes the Motion, arguing that the process for accomplishing service through the Hague Convention is ongoing and that there is no reason to disrupt that process. (Doc. No. 162 at pp. 6–8). L. Possebon proffers documentation from the Superior Court of Justice in Brazil reflecting that Plaintiff

---

[3] According to the Declaration of Daniel Stolz, Esq., Guttman has also served as counsel to Diego Possebon. (*See* Doc. No. 88-4 at ¶ 16).

initiated the Hague Convention process as early as June 2024.[4]  (Doc. No. 162-5 (Declaration of Philip A. Goldstein, Esq.); Doc. No. 162-6 (version of documentation in Portuguese annexed to Declaration); Doc. No. 162-7 (version of documentation translated into English annexed to Declaration)).  L. Possebon asserts Plaintiff simply has not shown a need for such urgency to avoid the Hague Convention process.

L. Possebon also challenges the Motion because she claims the proposed alternative means of service are inappropriate.  First, L. Possebon contends that service via email to a resident of Brazil is not authorized by the Hague Convention's methods of service.  (*See* Doc. No. 162 at pp. 7–12 (raising also Brazil's objection to service "by postal channels" set forth in Article 10 of the Convention)).  Second, L. Possebon argues that service upon Guttman, who does not represent her in this matter, would be improper because Guttman has not been transformed into an agent authorized to receive service on behalf of L. Possebon in every instance.  (Doc. No. 162 at pp. 18–20; *see also* Doc. No. 162-1 (Declaration of Guttman)).  Third, L. Possebon also contends that service upon Levy is improper because she has not designated Levy as an agent authorized to accept service and because Plaintiff relies solely on mere speculation that L. Possebon is in contact with Levy.  (Doc. No. 162 at pp. 22–23).

Plaintiff contends in his reply that he need not complete the lengthy Hague Convention process before seeking relief under Rule 4(f) of the Federal Rules of Civil Procedure.  (Doc. No. 176 at p. 5).  In addition, Plaintiff contends that the majority of courts have rejected the argument that email service is improper under the Hague Convention, and further that service upon Guttman and Levy are appropriate given their representations of L. Possebon's interests in the transaction

---

[4]  In Plaintiff's September 12, 2024 letter to the Court, Plaintiff represents that he initiated the process with Brazil's Central Authority on June 5, 2024.  (Doc. No. 218 at p. 7).

4

at issue. (*See* Doc. No. 176). Notably, Plaintiff contends that Guttman need not be authorized to accept service on behalf of L. Possebon for service through him to comport with due process. Plaintiff notes that Guttman is monitoring and participating in these proceedings through having been served with the instant Motion, attending a status conference regarding Fidelity's application to interplead funds, and filing a declaration in support of L. Possebon's opposition. (Doc. No. 176 at pp. 9–10).

While the Motion remained pending before the Court, the Court directed Plaintiff to provide certain information as to the status of service on Defendants. (Doc. No. 186). In response thereto, Plaintiff filed a letter dated September 12, 2024, setting forth the status of service on domestic and foreign defendants, which reflects that service remains pending upon a large number of foreign defendants. (Doc. No. 218).

Thereafter, L. Possebon, through new counsel entering a limited appearance, filed a Motion, pursuant to Local Civil Rule 7.1(d)(6), to File a Sur-Reply on the Motion regarding alternative service. (Doc. No. 264). L. Possebon contends that the sur-reply is warranted to respond to the September 12, 2024 letter and to "new arguments" raised in Plaintiff's reply on the underlying Motion, such as Plaintiff's contentions regarding service through Guttman. (Doc. No. 264-1 at pp. 1–2). L. Possebon attaches to the Motion to File a Sur-Reply the Sur-Reply she seeks to file. (Doc. No. 264-2).

Plaintiff opposes the Motion to File a Sur-Reply. (Doc. No. 292). Plaintiff contends that L. Possebon's Motion is untimely and unwarranted. (Doc. No. 292 at p. 1). Nevertheless, Plaintiff responds to L. Possebon's substantive arguments raised in the proposed Sur-Reply. Plaintiff contends that L. Possebon is delaying service through the Hague Convention process to "hinder the Trustee's recovery efforts." (Doc. No. 292 at p. 2). He informs the Court that L. Possebon has

filed objections to service through the Hague Convention process. (Doc. No. 292 at p. 2). Plaintiff also reiterates that expediency is warranted as to L. Possebon so that Fidelity, which has frozen the Condominium Proceeds in its possession, can interplead them with the Court promptly. (Doc. No. 292 at p. 2).

**II.    LEGAL STANDARD**

Because L. Possebon resides in Brazil, Rule 4(f) of the Federal Rules of Civil Procedure applies and states:

> **Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served at a place not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> >
> > (C) unless prohibited by the foreign country's law, by:
> >
> > > (i) delivering a copy of the summons and of the complaint to the individual personally; or

> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). Thus, there are three potential methods of service:

> (1) under the Hague Convention or other applicable international agreement; (2) in the absence of limitations under an international agreement, as a foreign country's law prescribes or permits or as directed by a foreign authority; or (3) by other means not prohibited by international agreement, as directed by the Court.

*Celgene Corp. v. Blanche Ltd.*, No. 16-501, 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017). In addition, any method of service must comport with constitutional principles of due process. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Hague Convention is an international treaty that governs the process by which plaintiffs residing in one signatory nation may effectuate service upon defendants located within another signatory nation. *See Hayward Indus., Inc. v. CompuPool Prods.*, No. 22-7330, 2023 WL 3736216, at *5 (D.N.J. May 31, 2023). The Hague Convention process requires a plaintiff to serve a party located in another signatory nation by submitting a request for service to the receiving nation's central authority overseeing such matters, which in turn either serves the document on the party or arranges for service by an outside agency. *See id.* That central authority then provides details to the plaintiff concerning whether or not service has been effectuated. *Id.*

Notwithstanding the Hague Convention process, Rule 4(f)(3) grants the Court broad discretion to permit alternative service of process. *See id.*; *accord DUSA Pharms., Inc. v. Biofrontera Inc.*, No. 23-20601, 2024 WL 4151169, at *4 (D.N.J. Sept. 11, 2024). While alternative service under Rule 4(f)(3) is a sufficient independent basis for service, courts in this District consider, among other things, whether the plaintiff has attempted service through

7

traditional means. *See Hayward Indus.*, 2023 WL 3736216, at *5; *DUSA Pharms.*, 2024 WL 4151169, at *3; *Celgene Corp.*, 2017 WL 1282200, at *2 (holding that "[a]lthough alternative service under [R]ule 4(f)(3) 'is equal to other forms of service,' the plaintiff should still show some difficulty in effecting service by normal means" (quoting *Bravetti v. Liu*, No. 12-7492, 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013))). As a result, the Court may order alternative service on a foreign defendant even if other means are possible or not unduly burdensome, but "it is helpful to plaintiff's case to show some measure of difficulty in effecting service by usual means." *Bravetti*, 2013 WL 6501740, at *3; *accord DUSA Pharms.*, 2024 WL 4151169, at *3.

### III.    DISCUSSION

The Court first considers L. Possebon's Motion to File a Sur-Reply before turning to the merits of the underlying Motion. Parties are not to file sur-replies absent leave of Court, and such leave lies within "the District Court's sound discretion." *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014); *see* L. Civ. R. 7.1(d)(6). Sur-replies should be limited to addressing new issues raised for the first time in a reply brief, rather than to present arguments that could have been included in an opposition brief. Here, the Court exercises the discretion to grant L. Possebon's Motion to File a Sur-Reply. While some of the arguments presented are a re-hash of those already presented in her opposition, L. Possebon also addresses updates to the status of service and additional arguments raised by Plaintiff in his reply brief. Furthermore, Plaintiff has addressed the merits of the sur-reply in his opposition to the Motion to File a Sur-Reply, limiting any prejudice to Plaintiff in granting this Motion.

Turning now to the merits of the underlying Motion, the Court recognizes that Plaintiff need not show undue burden or impossibility in effectuating service on L. Possebon through the Hague Convention. Nevertheless, Plaintiff contends that there is some need for expediency in

8

serving L. Possebon, in asking the Court to permit alternative service to avoid the delays caused by the Hague Convention process. While the Court acknowledges the delays caused by the Hague Convention process, the Court disagrees that there is an urgency sufficient to persuade it to eschew the Hague Convention procedures. Indeed, Plaintiff seeks to recover the Condominium Proceeds. However, Plaintiff and Fidelity have both represented that the funds held by Fidelity are frozen and ready to be deposited with the Court, subject to service on L. Possebon. Plaintiff has not shown that these funds may disappear in the additional time required to permit the Hague Convention process to proceed.

In addition, it appears that the Hague Convention process for service on L. Possebon is well underway. Notably, Plaintiff points out that L. Possebon has asserted objections to Brazil's Central Authority. (Doc. No. 292 at p. 2). This indicates that the formal request is already under consideration by the Central Authority. Given the status of that process, which Plaintiff argued should take approximately six months, prudence dictates that the process be permitted to continue. Furthermore, Plaintiff has initiated service of process on many other foreign defendants. A mere look at the docket for this matter reflects this case is still in its nascency and there is much to be accomplished before dispositive motions are to be filed. Balancing these considerations, and exercising the Court's discretion, the Court finds it prudent to permit the process pending before Brazil's Central Authority to proceed before granting relief pursuant to Rule 4(f)(3) as to L. Possebon. As such, the Court DENIES Plaintiff's Motion. Nevertheless, Plaintiff may file anew a motion for alternative service should circumstances change.[5] As such, the Court does not

---

[5] For example, Plaintiff may renew his motion should Brazil's Central Authority deny his request for service, should a risk arise that the Condominium Proceeds may be dispersed or depleted somehow, or if there has been a longer delay in the Hague Convention process than contemplated as of the date of this Opinion.

consider the merits of Plaintiff's proposed alternative methods of service, other than to note that some appear to comport with due process. Should Plaintiff file such renewed motion, the Court will consider the merits of the proposed alternative methods of service.

## IV. CONCLUSION

For the reasons set forth above and good cause shown,

**IT IS** on this **27th** day of **January 2025** hereby

**ORDERED** that Plaintiff's Motion For Alternative Service (Doc. No. 88) is **DENIED without prejudice**; and it is further

**ORDERED** that Defendant Larissa Carvalho Possebon's Motion to File a Sur-Reply (Doc. No. 264) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motions pending at Docket Entries Numbered 88 and 264.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**