

Eric T. Kanefsky, Senior Partner
862.772.8149   eric@ck-litigation.com

January 30, 2025

**VIA ECF**

Honorable Robert Kirsch, United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

Re:   *Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC v. Diego Possebon, et al.*, Case No. 3:24-cv-04647-RK-RLS

Dear Judge Kirsch:

This law firm is co-counsel to plaintiff Edwin H. Stier, Esq., as Wind Down Trustee for MLS Berkowitz Investments, LLC (the "Trustee"). We write in response to the January 17, 2025 letter from Defendant Treviso Corretora de Cambio S.A. ("Treviso"), requesting a conference with the Court regarding an anticipated motion to dismiss for lack of personal jurisdiction and failure to state a claim. *See* (ECF Doc. 335) (the "Treviso Letter"). Consistent with Your Honor's Rules and Procedures, Counsel for the Trustee and counsel for Treviso participated in a meet and confer on January 23, 2025, but the parties' discussion did not result in resolution of any of the issues raised by the Treviso Letter.

**I.   RELEVANT BACKGROUND.**

This case stems from a massive fraud perpetrated against MLS Berkowitz, LLC ("MLS"), a New Jersey limited liability company trading raw metals, and its principal creditor, Gerald Metals SARL ("Gerald"). *See* Complaint, ¶¶ 1, 14. The fraud was orchestrated by Diego Possebon ("Possebon"), who worked with dozens of co-conspirators to induce MLS into issuing millions of dollars in payments based on false representations that tin concentrate would be shipped to Gerald's customers when, instead, those customers were sent worthless gravel dust. *Id.*, ¶¶ 1-7. Defendants Dakar Industria De Componentes Industriais Ltda. ("Dakar") and TW Brasil Ltda. ("TW Brasil"), were the exporters of record for the tin transaction and played a central and indispensable role in the fraud. *Id.*, ¶ 27. These defendants were well aware that gravel dust was being exported to Gerald's customers and made numerous false representations to MLS and Gerald to convince them that Dakar and TW Brasil were overseeing the transport, inspection, and packaging of tin. *Id.*, ¶¶ 27, 381. For these "export services" they were purportedly providing, MLS wired approximately $1.78 million from its United States bank account to Dakar and TW Brasil. *Id.*, ¶ 320. Treviso "provide[d] currency exchange services for Dakar and TW[.]" *See* Treviso Letter: 2).

The fallout from the fraud has been catastrophic. MLS paid nearly $50 million in funds for no valuable consideration and is bankrupt. Complaint, ¶ 8. The Trustee was appointed pursuant to an Order of the Bankruptcy Court, and his powers under that Order include the authority to seek recovery of the money that was stolen as a result of the fraud. *See id.*, ¶ 10. As

Letter to Honorable Robert Kirsch, U.S.D.J., Thursday, January 30, 2025
Page 2 of 3

alleged in the Complaint, the Court has jurisdiction over the case under 28 U.S.C. § 1334 because the matter arises from the related bankruptcy action for MLS. *See id.*, ¶¶ 219-20; *see also* 28 U.S.C. § 1334(b) (district courts shall have original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11"). The Third Circuit has explained that the scope of "related to" jurisdiction under 28 U.S.C. § 1334(b) is "extremely broad, extending to any action the outcome of which 'could conceivably have any effect on the estate being administered in bankruptcy.'" *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997) (internal citation omitted).

>Fed. R. Bankr. P. 7004(f) governs personal jurisdiction and states:

>If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Under F.R.C.P. 4(f)(1), service is permitted "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]" The Trustee has made a formal request to the Central Authority of Brazil to serve Treviso pursuant to the Hague Convention.

## II. TREVISO'S JURISDICTIONAL ARGUMENTS FOR DISMISSAL ARE UNPERSUASIVE.

Treviso contends that personal jurisdiction is lacking because, although it received wire transfers from the United States, it did not "reach out" to the jurisdiction. *See* Treviso Letter: 2. Its arguments are unpersuasive.

As discussed above, MLS, a New Jersey LLC, transferred approximately $1.78 million from its United States bank account to Dakar and TW Brasil, who were indispensable participants in the fraud. *See* Complaint, ¶ 320. And, as Treviso acknowledges, *see* Treviso Letter: 2, it took direction from Dakar and TW Brasil and converted funds transferred from the United States to Brazilian Reais on behalf of Dakar and TW Brasil, a service from which it invariably would have earned fees. These allegations are more than sufficient to establish that Treviso directed wrongful conduct at the United States and that exercising personal jurisdiction over Treviso would be both fair and appropriate. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007); *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 861-62 (N.D. Ill. 2016) (holding that the plaintiff had made a *prima facie* showing that Mizuho, a Japanese bank based in Tokyo, was subject to personal jurisdiction in California based on allegations that: (i) the California plaintiff wired $40,000 from a Wells Fargo branch in California to the Mizuho account of Mt. Gox (a bitcoin exchange); (ii) Mizuho accepted the wire transfer into Mt. Gox's Mizuho account, earning a service fee in the process; and (iii) Mizuho committed fraud and was unjustly enriched because it induced the plaintiff into making the deposit by failing to disclose that Mizuho had stopped

Letter to Honorable Robert Kirsch, U.S.D.J., Thursday, January 30, 2025
Page 3 of 3

providing Mt. Gox with cash withdrawal services, meaning that Mt. Gox users could not withdraw their money).

At the very least, these allegations are sufficient to warrant jurisdictional discovery. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 283 (3d Cir. 1994) ("discovery directed to personal jurisdiction" should "be freely permitted") (internal citation and quotation marks omitted); *Caduceus, Inc. v. Univ. Physician Grp.*, 713 F. Supp. 3d 30, 35 (D.N.J. 2024) (noting the "presumption" of jurisdictional discovery for corporate defendants).

### III.   TREVISO'S RULE 12(B)(6) CHALLENGES ARE UNAVAILING.

The Complaint sufficiently states a claim against Treviso for aiding and abetting fraud because it specifically alleges that: (i) there was a fraudulent scheme orchestrated by Possebon and his co-conspirators; (ii) Treviso had knowledge of the fraud; and (iii) Treviso substantially assisted in the commission of the fraud by enabling the flow of funds to two of the main fraudsters, Dakar and TW Brasil. *See, e.g., Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (elements of aiding and abetting are "(1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing").[1]

And even if there was any merit to Treviso's position, any concerns about the sufficiency of the allegations can be addressed through an amendment further detailing Treviso's knowledge and assistance. *See, e.g., In re TelexFree Sec. Litig.*, 626 F. Supp. 3d 253, 272 (D. Mass. 2022) ("[W]hen a bank has actual knowledge that its routine services are assisting a customer in committing a specific tort, the provision of those services may constitute substantial assistance.").

\*   \*   \*

We thank the Court for its attention to this matter.

Respectfully submitted,

*[signature]*

Eric T. Kanefsky, Esq., Senior Partner
Calcagni & Kanefsky LLP

cc (via ECF):   All counsel of record

---

[1] While Treviso seeks to invoke Rule 9(b), the Rule expressly provides that "intent," "knowledge," and "conditions of a person's mind may be alleged generally," as the Trustee has done here.